The Commonwealth *against* DOUGLASS and others Inspectors of the Prison.

IN this case upon the motion of *Hopkinson*, founded upon the following affidavits, a rule was granted upon the defendants to shew cause why an information in the nature of a *quo warranto* should not be filed against them to inquire by what authority they exercised the office of inspectors of the prison of the city and county of *Philadelphia*.

" *John Clement Stocker*, of the city of *Philadelphia*, Esq. being
" duly sworn, doth depose and say, that being one of the alder-
" men of the said city, on the 5th day of *November* last, (1803)
" he called on *Matthew Lawler* Esq. mayor of the said city,
" and inquired of him at what time and place the election of
" inspectors of the prison of the city and county of *Philadel-*
" *phia* would be held, the appointment of the time and place of
" holding the said election being vested in the mayor, and this

*An act of Assembly vests the appointment of Inspectors of the Prison, in the mayor and two aldermen of the city, and two justices of the county of Philadelphia, and directs it to be exercised on a certain day. An appointment made in a clandestine manner after a refusal by the*

mayor to make known to certain aldermen and justices the hour and place at which such appointment would be made, is not such an exercise of the mayor's discretion, as the law will warrant; and the court will give leave to file an information in the nature of a *quo warranto*, against the inspectors so appointed. One who has an authority to appoint to a public office, cannot appoint himself.

1803.

Common-
wealth
v.
Douglass.

" deponent believing that as an alderman of the said city, he
" had a legal right to participate in the said election. To the
" inquiry made as aforesaid by this deponent, the said mayor
" replied, ' The law points out the time.' This deponent said,
" ' I believe it is on *Monday* next.' The mayor replied ' Yes.'
" The deponent then inquired of the said mayor ' at what place
" do you hold the election?' To which the mayor answered,
" that he had not made up his mind. This deponent further
" inquired ' At what *hour* do you intend to open the election?'
" To which the mayor again replied ' I have not as yet made up
" my mind as to the time, but I shall summon as many as the
" law directs.' This deponent then addressed the mayor and
" said: ' You will have no objection to let me know the time
" and place of the said election, if I shall call on you on
" *Monday* morning.' The mayor replied ' I shall summon as
" many as the law directs, but I shall not let you know.' This
" deponent observed that he hoped they had the same thing in
" view, the choice of good men. The mayor said he hoped so,
" but that he would not let this deponent know when it was to
" take place. The deponent replied that he thought it was hard
" to be debarred of his right to know the time and place of the
" election and to participate in it. The mayor again replied,
" ' that I might think as I pleased, but that he should sum-
" mon whom he pleased and would not let me know when or
" where.' That *John Douglass* Esq. was present during the
" conversation."

" *Ebenezer Ferguson* of the district of *Southwark* in the
" county of *Philadelphia*, being duly sworn, doth depose and
" say, that this deponent, being a justice of the peace in and
" for the county of *Philadelphia*, on *Saturday* the 5th day of
" *November* last, (1803) in company with several of the alder-
" men of the city of *Philadelphia*, and justices of the peace of
" the said county, waited upon *Matthew Lawler* Esq. mayor of
" the said city, to be informed of the time and place at which
" the election of the inspectors of the prison of the city and
" county of *Philadelphia* would be held, that they might parti-
" cipate in said election. That upon making the inquiry of the
" said mayor, he declined to give the information desired.
" That on *Monday* the 7th day of the said month of *November*,
" the deponent, in company with a great number of the said

" aldermen and justices, to wit, (six aldermen and eight jus-
" tices) waited upon the said mayor at his office, a few minutes
" after nine o'clock in the morning, it being the day appointed
" by law for holding the said election of inspectors of the
" prison, and inquired of the said mayor to be informed of the
" time and place of holding the said election, as this deponent
" together with the said aldermen and justices wished to
" participate in the choice of the said inspectors. The said
" mayor replied that the appointment of inspectors was already
" made."

The act of Assembly which first regulates the appointment of inspectors, enacts, That it shall and may be lawful for *the mayor and two aldermen of the city of Philadelphia, and two of the justices of the peace of the county of Philadelphia* " on the " first *Monday* in *May* next to appoint twelve inspectors, six of " whom shall be in office until the first *Monday* in *November* " next, and six until the first *Monday* in *May* following; and so " from time to time six inspectors shall be appointed in manner " aforesaid, on the first *Mondays* in *May* and *November* follow- " ing." *April* 5th, 1790. 2 *St. Laws* 810. This provision is repeated in a supplement to the *Penal Laws* of this state passed 23d *September* 1791. 3 *St. Laws* 124.

The rule was returnable on *Monday* the 19th inst. when *Dickerson* on behalf of the defendants appeared to shew cause; *Hopkinson* and *Ingersoll* for the prosecutors.

The commission of the defendants was then produced signed by *M. Lawler*, mayor, John Douglass and *John Barker*, alder- men, *F. Wolbert* and *J. Kessler*, justices of the county; and it was then in proof that the usage had been to summon nine or eleven magistrates, not less than four from the county and five from the city, the mayor always naming the individuals; that they generally met in the afternoon, and uniformly at the mayor's office; that the present mayor in the appointment pre- vious to the last had followed this usage, in consequence of which so many magistrates attended of sentiments hostile to his own, that he was out-voted, and had joined in commission- ing officers he did not approve; and that to guard against a repetition of this act, he summoned in this instance but four

*1803.*

Common-
wealth

*v.*

Douglass.

magistrates, with whom he made the appointment at a tavern in
Common- the city, before nine o'clock in the morning; one of the alder-
wealth men present being appointed one of the inspectors, and *joining*
v. *in his own commission.*
DOUGLASS.

 Upon these facts and the act of assembly, *Hopkinson* argued,
that as the law does not designate any two justices or aldermen
who are to hold the election, it does not give an authority to the
mayor to select any two; that therefore, by a necessary infe-
rence, the power of electing is vested in the whole body of the
magistrates of the city and county; *all* and *each* having an *equal*
right to participate in it, although it may be done by *any two.*
All therefore who attended and claimed the right, were illegally
deprived of it by the refusal of the mayor to inform them of
the time and place of holding the election. The legislature
provides for an emergency, by requiring the assent of only a
few, as there are circumstances under which only a few can be
assembled; but beyond question, for the sake of the peniten-
tiary institution, it intended to reserve the benefit which might
arise from the counsels of the whole or a large portion, when-
ever the whole or the portion chose to advance their opinions,
and legally demanded an opportunity to express them. If the
contrary position be true, there is more than one consequence
flowing from these provisions of the law totally irreconcileable
with policy or common sense. In the first place, the opinion of
nine tenths of the city and county magistrates may be rendered
of no effect by the opposition of one tenth. This is contrary to
the spirit of our laws in every other instance. In the next
place, the mayor alone might as well make the whole appoint-
ment. For if he may summon to his assistance those only who
suit him, and then clandestinely execute the law, it is clear that
none but those of his own sentiment will receive an invitation,
and therefore that his own candidates will always be appointed.
This is contrary to the spirit of the particular law in question;
for it is evident from the selection of at least two magistrates
from the county and as many from the city, that the object of
the law was to procure an expression of the public will from
each of these districts, because it is to them that the regulations
of the prison have a principal relation.

 Whether the mayor is an essential member of the appointing
body, it is not material to inquire, as this is not a case in which

**an** appointment has been made without his concurrence or against his will; our present point is that he has no discretion to reject the vote of any alderman or justice who presents himself for the purpose recited in the law; for if he has the discretion, he may usurp the whole power.

1803.

Common-wealth

*v.*

DOUGLASS

Let it be granted however for the sake of argument that the mayor has this discretion; we then say that he has exercised it in a manner so *partial, oppressive* and *arbitrary*, as calls for the exercise of the constitutional powers of the supreme court in this behalf.

The first circumstance of this kind in the case is, that it was not a bare neglect to summon the officers, but a deliberate denial of their right upon a claim made by them to exercise it. Another is the desertion of the ordinary *place* of meeting. The mayor's office as well as the most natural was the most usual scene of these appointments; and in changing it for an inn upon an occasion of this nature, it is certain that the object was to disappoint those who in a reliance upon usage should resort to the accustomed place. A third circumstance is the *hour*. There is a want of confidence in the measure betrayed by the parties themselves in the selection of the time. If the mayor has the discretion which is contended for, this is not the way in which he must exercise it to secure the protection of the law; it is a reasonable discretion alone that is defended by this court; and there is not a better ground for defeating a manifest *usurpation* of right, than there is for defeating a right thus oppressively, partially, and unjustly exercised. The *King* v. *Young* and *Pitts.* (a)

The common defence of a discretion thus used is *ignorance;* but it cannot be the plea of the present mayor. He was acquainted with the usage, as in one instance at least he pursued it. He was moreover advised to adhere to it by the constitutional counsel of the city; but the advice was rejected, although the consequence was that *John Douglass* appointed and commissioned himself. (b) The spirit of the proceeding infects the whole appointment; and an information is the proper remedy.

(a) 1 *Burr.* 556 559.

(b) It appeared that the recorder of the city had advised the mayor not to proceed to the appointment as he did; but his advice was founded on the inexpediency of the measure rather than on any opinion he had formed of its illegality

1803.

Common-
wealth
*v.*
Douglass.

*Dickerson* argued, that the law provided for the *appointment* and not for the *election* of inspectors. An appointment is not necessarily an election; in the present case it bears no resemblance to an election; and the law has carefully avoided the use of the latter term. Had the legislature intended that the inspectors should be placed in their offices by an election, the place, as well as the time, and the manner of conducting it, would have been pointed out, as in the case of other elections.

As the city and county are both interested, so they both ought to have some influence in the appointment of inspectors. To have given this power without control to the mayor, would have been doing injustice to the county. The only check, however, which the legislature thought proper to place upon the power of the mayor was, that he should not appoint inspectors without the concurrence of at least two of the justices of the peace of the county, and two aldermen of the city; and with their concurrence he could undoubtedly make the appointment, even if all the other aldermen of the city, and all the other justices of the county should oppose him.

It is said, that the mayor by summoning but two aldermen and two justices may always have the appointment made exactly to his own liking. But how did the conduct of the former mayors vary from this rule? It is true, they generally invited four justices and five aldermen to attend the appointments; but they took care to invite such only as would agree with them in the choice. There is no instance where one of those mayors has *merged* his own vote by inviting those who would vote against him; nor indeed was there any obligation upon them to do so. Those mayors had as full and absolute control over the appointments with five aldermen and four justices, as the present mayor had with two aldermen and two justices; the principle is precisely the same in the one case as in the other. The law is express, that the mayor, two aldermen and two justices shall have the power to appoint &c.

It is said that the mayor, if he had the right of selection, has exercised it in a *partial, oppressive* and *arbitrary* manner; and that although he might not be bound to give *notice* &c. to all the aldermen and justices, yet he was bound to give them that information when they applied for it; that they were entitled to this information as a matter of right.

These questions are not fairly before the court. If the mayor has deprived these aldermen and justices of any of their rights, they have their remedy against him; they may bring their actions, or proceed against him as they please; but it is idle to proceed against the inspectors for injuries they have sustained from the mayor. It is sufficient for the inspectors that they hold a commission executed by the mayor, two aldermen, and two justices; they were bound to serve or be subject to a penalty; nor was it their business to inquire whether the mayor had deprived any person of his right to vote; these exceptions therefore to the conduct of the mayor ought not to have any influence in deciding the question before the court.

It is said that one of the inspectors is one of the appointing magistrates. But it does not follow from this that the appointment is bad. Even in the case of an election to a corporation office, it seems fairly inferible from the *King* v. *Malden* (a) that it is no objection to the officer that he presided at his own election, and was sworn in before himself. But the present case is merely an *appointment;* and it rests with the gentlemen in favour of the rule to shew that because a person is vested with the right to appoint, he is precluded from exercising that right in his own favour. If however the court should be of opinion that he could not concur in his own appointment and by that concurrence make it valid, it will not be denied that his concurrence in the appointment of others is good; his case therefore cannot in the slightest degree affect the appointment of the others.

The law does not fix the hour of the day nor the place of making the appointment; and there has not been sufficient time since the passing of the law to establish any rule upon the subject by custom. Nor indeed does it appear that there was any necessity for a meeting at all, if the concurrence of the mayor, two aldermen, and two justices, could have been obtained on the proper day without. The mayor has exercised his discretion upon these points, according to the spirit of the law. It is sufficient that the appointment was made on the proper day, and by the officers required by law to make the same.

*Ingersoll* in reply said that the question was not so much whether the mayor had a discretion, as whether he had exer-

(a) 4 *Burr.* 2130.

*Margin note:* 1803.

Commonwealth
*v.*
Douglass.

1803.

Commonwealth
v.
Douglass.

cised it in a fair and reasonable manner, without which the appointment could not be valid. That whether it was called an appointment or an election was immaterial; for that where an authority may be exercised by several, equal opportunity of doing it should be given to all; and where this opportunity is *oppressively* withheld, it corrupts the whole proceeding. That the case of the *King* v. *Malden* did not apply, as the plaintiff did not elect himself; but the only point there decided was that he was not duly sworn in.

The opinion of the court was delivered by

Yeates J. (a) The words of the 17th sec. of the act of 23d *Sept.* 1791 are that " it shall and may be lawful for the mayor and " two aldermen of the city of *Philadelphia* and two justices of " the peace for the county of *Philadelphia* to appoint inspectors " of the prison of the city and county of *Philadelphia* on the 1st " *Mondays* of *May* and *November* in every year, and on any " other days when vacancies shall happen in the said office by " death resignation or otherwise." It appears to a majority of the court, that the legislature intended to vest in the mayor a certain legal discretion, which should be exercised in a fair, equal, and reasonable manner. The question is not, whether the mayor is bound to give formal notice to all the aldermen of the city, and justices of the peace of the county, when and where the appointment shall be proceeded upon: but whether when he has been called upon by persons of that description whom the law vests with a power of appointment, and who are desirous of exercising that right, he can legally refuse to give them information of the place and hour of appointment, and preclude them from giving their sentiments upon the subject. We are of opinion that he is not justified by law in this refusal; and thus proceeding to a nomination at an unusual hour and place is not such an exercise of his discretion as the law will warrant; because this would be in effect an assumption of the whole power by the mayor, which cannot be collected from the words of the law. One having a discretionary authority to appoint a fit person to a public office appointing himself, seems a solecism in terms; and it cannot be deemed the fulfilment of his duty. We perfectly concur with Mr. Recorder that whatever right the

(a) Shippen C. J. was absent, from indisposition.

mayor had in this appointment, it was improper to exercise it in the manner he has done; and therefore think good and legal grounds have been shewn to file the information prayed for by the relators, in the nature of a *quo warranto*.

BRACKENRIDGE J. I concur in this opinion only so far as touches the case of *John Douglass*.

Rule absolute.