Willis G. C. Wood, Plaintiff, *v.* Town of Whitehall, Defendant.

Supreme Court, Washington County, January, 1923.

**Public officers — town board has no right to appoint one of its own members to office — selection of board member as police justice void.**

Where a town board is vested by statute with appointing power, the appointment of one of its own members to an office to be filled is against good conscience and illegal.

At a meeting of the town board of the town of Whitehall, N. Y., held for the purpose of appointing a police justice, all members of the board, the supervisor, the town clerk and four justices of the peace, of which plaintiff was one, were present. The supervisor, who was the chairman of the board, did not vote for police justice and plaintiff having received five votes was declared appointed to that office and on motion his appointment was made unanimous. *Held*, that upon broad grounds of public policy such appointment was illegal and void, and the complaint in an action to recover salary as police justice will be dismissed.

Action to recover salary as police justice of defendant town.

*William Sears*, for plaintiff.

*L. M. Layden* (*W. L. Sawyer*, of counsel), for defendant.

Angell, J. Plaintiff was appointed police justice of the town of Whitehall November 9, 1921. The appointment was made by the town board under a special statute (Laws of 1895, chap. 25, as amd. by Laws of 1896, chap. 846) enacted " to provide for the better administration of justice in the town of Whitehall." Previous to plaintiff's appointment the salary of the police justice had been fixed by the town board, under authority vested in it by the statute, at $600 per year payable in monthly installments of $50 each. The salary was paid by the supervisor until March 1, 1922, but payment thereafter was refused, upon the ground that plaintiff had been illegally appointed. This action was brought to recover four months' salary which had accrued prior to the commencement of the action, and his right to hold the office necessarily is involved.

At the time of plaintiff's appointment he was one of the justices of the peace of defendant town, and as such a member of the town board that appointed him. The minutes of the meeting held November 9, 1921, for the purpose of appointing a police justice, show that all the members of the board, the supervisor, the town clerk, and four justices of the peace, were present. On the ballot to designate the police justice, the supervisor, who was the chairman of the board, abstained from voting. Plaintiff received five votes, one of which must have been his own. It is also apparent that

his vote was not necessary to constitute a majority, and that he would have been appointed without his own vote cast for himself. He was thereupon declared appointed police justice for the term of two years, and on motion his appointment was made unanimous.

Defendant contends that the appointment was illegal, because plaintiff was a member of the appointing board. The proposition is, therefore, squarely presented whether an appointment by a public board, vested by statute with the appointing power, of one of its own members to the office to be filled, is a legal appointment, where there are sufficient votes for the appointee without his own.

There is no question raised but that plaintiff has well filled the office of police justice to which he was appointed. He has apparently performed its duties to the satisfaction of the people of his town. This, however, should not affect the determination of the question. Such considerations cannot make an appointment legal if it is contrary to the trend and policy of our institutions.

It seems clear to me that it would be contrary to public policy and the general welfare to uphold such an appointment. When public officers, such as the members of a town board, are vested by the legislature with power of appointment to office, a genuine responsibility is imposed. It must be exercised impartially, with freedom from a suspicion of taint or bias which may be against the public interest. An appointing board cannot absolve itself from the charge of ulterior motives when it appoints one of its own members to an office. It cannot make any difference whether or not his own vote was necessary to the appointment. The opportunity improperly to influence the other members of the board is there. No one can say in a given case that the opportunity is or is not exercised. What influenced the other members to vote as they did, no one knows except themselves. Were their motives proper, based solely on the fitness of the appointee? They may have been. Were they improper, based on the promise or expectation of reciprocal favors? They may have been. No one knows, except the parties directly interested. That is the difficulty. This is the possibility which the law should remove by determining such appointments to be illegal.

Viewing the question from another aspect, the same result is arrived at. When the members of a board are given the appointing power, it seems necessarily implied in that power that they cannot appoint themselves. The situation is not different in principle from where the appointing power, instead of being vested in a board, is vested in a single official. The mayors of most of our cities, for example, have the power to appoint a superintendent

of public works, a city attorney, and various other functionaries. It has never occurred to any one to argue that a mayor thus situated may appoint himself to these various offices, or to any one of them. How is the situation different where the appointing power is vested, not in a single individual, but in a board consisting of a half dozen individuals? Each one is a part of the board. If the board appoints one of its own members it appoints itself, or a part of itself. It cannot be material whether the part of the board appointed participates in the act of appointment. It is still the act of the board, and as the appointee is a member of it, the board appoints a part of itself the same as if he had actively aided. His own participation cannot matter. He has as much right to assist in the appointment of his own entity as the board has to assist in the appointment of a part of its entity.

The situation is not to be distinguished from one that would exist if the town board, consisting of six members, were vested with the duty of appointing six police justices instead of one. Could the board, in that case, successively elect each of its six members a police justice, in each instance the one being elected not voting for himself? Absurd as that seems, it is difficult to perceive why such action would not be legal if this appointment can be upheld simply because plaintiff did not cast the deciding vote in his own favor. That situation, repugnant to the sense of fairness of all, might arise at any time if the sanction of the law is given to the election of this plaintiff.

Neither can it be material, as above suggested, how innocuous such an appointment may be in an individual instance. The seed is there, and if allowed to germinate it cannot but bear noxious fruit in its growth and development.

The trend of authority is in accord with this reasoning. No like situation, however, has developed in any discoverable case reported in this state. One slightly analogous appears in *People ex rel. Davis* v. *Thomas*, 33 Barb. 287. There the justices of the peace of a town attempted to fill by appointment a vacancy existing in the office of supervisor. The statute required the appointment to be by warrant under the hands and seals of three of the justices. The three appointed one of their number, and all three joined in the execution of the warrant. The court held the appointment invalid because the appointee had joined in the warrant certifying his own appointment, saying that a man cannot be both the grantor and the grantee of a franchise.

In *Beebe* v. *Supervisors of Sullivan Co.*, 64 Hun, 377; affd., on opinion below, 142 N. Y. 631, a contract was made by a board of supervisors to employ one of its members, an attorney, to prosecute

certain actions in which the county was interested. The employment was held void. While in that case there was an employment, as distinguished from a public office, the court laid down certain principles which are applicable here: " At the time of his employment the defendant Anderson was a member of the board of supervisors; they were the agents of the county of Sullivan, and as such had no right to enter into contracts   *   *   *   with each other at the expense of those for whom they are acting, and whose interests they are bound to guard and protect (citing cases). The illegality of such contracts does not depend upon statutory enactments, they are illegal at common law. It is contrary to good morals and public policy to permit municipal officers of any kind to enter into contractual relations with the municipality of which they are officers."

In 29 Cyc. 1381, the principle is stated thus: " It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office, so that, even in the absence of a statutory inhibition, all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint."

The rule is less positively stated in 23 American and English Encyclopedia of Law (2d ed.), 348, as follows: " On the ground of public policy, it has been held that the person or a member of the collective body invested with the appointing power cannot be appointed, and an appointment to the office of a member of the body invested with the appointing power is especially unauthorized where the vote of such appointee was necessary to secure his appointment."

A careful examination of the cases in other states in which a similar question has arisen discloses the same general attitude of the courts toward it. In some of the instances which have arisen there is a special statute which has been held to be violated. But most, if not all of these statutes have been enacted in aid of the common law, to put in specific statutory form what the common law frowns upon. In Kentucky, however, the invalidity of such appointments is placed upon broad grounds of public policy, unaffected by any statutory enactment.

Thus, *Meglemery* v. *Weissinger*, 140 Ky. 353; 31 L. R. A. (N. S.) 575, a case in the Kentucky Court of Appeals, was an action brought to have declared void the act of a county fiscal court in removing plaintiff from the office of bridge commissioner. Plaintiff, a magistrate and member of the court, was appointed bridge commissioner two days before his term of office expired. He was not present when the appointment was made. The court said: " As Meglemery was on December 31, 1909, a member of the body that

appointed him to fill this place, the appointment was void for reasons of public policy that are both sound and sufficient. * * * The fact that the power to fix and regulate the duties and compensation of the appointee is lodged in the body of which he is a member is one, but not the only, reason why it is against public policy to permit such a body charged with the performance of public duties to appoint one of its members to an office or place of trust and responsibility. It is of the highest importance that municipal and other bodies of public servants should be free from every kind of personal influence in making appointments that carry with them services to which the public are entitled and compensation that the public must pay. And this freedom cannot in its full and fair sense be secured when the appointee is a member of the body and has the close opportunity his association and relations afford to place the other members under obligations that they may feel obliged to repay. Few persons are altogether exempt from the influence that intimate business relations enable associates to obtain, and few strong enough to put aside personal considerations in dispensing public favors. And it is out of regard for this human sentiment and weakness, and the fear that the public interest will not be so well protected if appointing bodies are not required to go outside their membership in the selection of public servants, that the rule announced has been adopted, and ought to be strictly applied."

In *Kinyon* v. *Duchene*, 21 Mich. 498, the court held an appointment by a board of supervisors of some of the members of the board as drain commissioners was void, and said: " Whether they voted for their own appointment does not affirmatively appear, but they had as much right to do so as the others had to vote for them."

In *Commonwealth* v. *Douglass*, 1 Binn. (Penn.) 77, it appeared that under an act providing that the mayor and two aldermen of the city of Philadelphia and two justices of the peace of the county of Philadelphia might appoint inspectors of the city prison, a secret meeting of the five officials named was held and defendant, one of the aldermen present, was appointed such inspector. The court held the appointment void because of the manner in which the meeting was held, but also said: " One having a discretionary authority to appoint a fit person to a public office appointing himself, seems a solecism in terms; and it cannot be deemed the fulfilment of his duty."

In *Gaw* v. *Ashley*, 195 Mass. 173, the mayor of a city removed all the members of a board of health because they had appointed one of their number to the office of quarantine physician. The

board brought mandamus for reinstatement, alleging that they had been removed without cause. The court upheld the action of the mayor, and in its opinion said: "The first question is whether, under the ordinance, the board of health lawfully and properly could elect one of themselves to this office. We are of opinion that they could not. The ordinance contemplates the existence of a relation between the physician and the board which requires that he shall not be a member of it. He is to make frequent reports to the board, and from time to time is to make recommendations. His charges to the sick are to be only such as the board approves. His personal interest in these charges is inconsistent with the proper performance of his duty, as a member of the board of health, to fix their amount, in the interest of the public and for the protection of his patients."

In *State ex rel. Doyle* v. *Board of Education,* 54 N. J. L. 313, the appointment to the secretaryship of a city board of education of one of the members of the board was held invalid. The court's decision seems to be based particularly upon a statute providing that no member of any municipal board or body should, during the term for which he was elected, be eligible to any office required to be filled by such board, the court holding that this statute applied to the board of education.

In *Ellis* v. *Lennon,* 86 Mich. 468, it was held that the appointment by the common council of one of its members as chief of police was invalid. It appeared that the appointee had resigned from the common council, presumably so that he might be appointed chief of police, and that the appointment was made during the time for which he was elected to serve upon the common council. This decision was also apparently based upon a provision of the charter that no alderman should be elected or appointed to any other office in the city during the term for which he was elected as alderman. The court said that the purpose of the statute was to prevent officers from using their official position in the creation of offices for themselves or for the appointment of themselves to offices.

In *State of Oregon* v. *Hoyt,* 2 Oreg. 246, the relator, a member of the common council, voted for himself for city marshal. The appointment was held void. The court in its opinion referred to the fact that the relator, in voting for himself, violated a provision of the rules adopted by the council providing that a member should not vote on a question in which he is immediately interested.

In *State of Ohio ex rel. Louthan* v. *Taylor,* 12 Ohio St. 130, the relator was appointed to the office of superintendent of a county

infirmary by the board of directors thereof, of which he was a member, and it appeared that he gave the casting vote in his own favor. The court announced its decision in a brief statement in which it said that it concurred with counsel for the relators in their view of the law of the case. The law, as contended for by the relators' counsel, was that when the board of directors was given authority to appoint a superintendent, this " necessarily means that the person appointed shall be different from those who appoint." It is a fair inference from the report of the decision that the court adopted this view.

In *State ex rel.* v. *Kearns,* 47 Ohio St. 566, the court held that the appointment by the council of a member thereof to another office was not an abandonment of the office of councilman, because the appointment to the second office was a nullity. This decision seems to be in accord with the principle determined in the other Ohio case to which reference has just been made.

These authorities are practically all that I have been able to find relating to this question. I have felt that the importance of the principle involved, and the novelty of the question in this state, warranted this somewhat lengthy review of them. It is extremely significant that in them all the appointment to office of one of the members of the board having the appointing power is held illegal. True, in several of the cases this has been based upon some special statute which has been held specifically to prohibit such action. There are other cases, such as the *Thomas* case in our own state, where the appointment has been held invalid because the appointee himself cast the deciding vote in his favor. But it does not seem to me that this should be the determining factor; nor should it be the existence of a specific prohibitive statute. Such appointments should be held void upon broad grounds of public policy. It is against good conscience that a board with appointing power should appoint one of its own members to office. Such practice, even when not forbidden by specific enactment, and when the vote of the appointee is not necessary to the appointment, is against public morals. It cannot but result in evil.

Defendant is entitled to judgment dismissing the complaint.

Judgment accordingly.