Raynovich, Appellant, *v.* Romanus.

Argued September 25, 1972. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*George Raynovich, Jr.*, in propria persona, with him *Stone & Raynovich*, for appellant.

*John R. Luke*, with him *Luke & Dempsey*, for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 19, 1973:

This Quo Warranto proceeding challenges the validity of the borough councilmanic election of one of its members to fill a vacancy in the office of mayor. The appellant, George Raynovich, Jr., initiated the action alleging voting improprieties in the election of appel-

lee, John T. Romanus, to the office of Mayor of the Borough of Baldwin.

The complaint recites that on January 1, 1972, a vacancy existed in the office of Mayor of the Borough of Baldwin. At a properly called meeting on January 3, 1972, the borough council undertook to fill that vacancy. Four were nominated for the office of mayor: Romanus, Bracken, and Bennett—all council members; and Burke—a non-council member.

Appellant, also a member of council, objected to the nomination for the office of mayor of any council member.[1] He also objected to any nominated members participating in the voting. However, neither objection prevailed and council proceeded to vote on the nominees. Appellant voted for Burke, the non-council member. Bennett abstained from voting. Three council members voted for Romanus. Romanus voted for Bracken and Bracken voted for Romanus, giving Romanus a total of four votes out of seven. Immediately after resigning from council Romanus was sworn in as the new mayor on January 3, 1972, to fill the unexpired term.

In his complaint appellant alleged that by "prearrangement" Romanus and Bracken had voted for each other. Appellant contends that such a trade of votes is illegal, and thus invalidates council's election of Romanus as mayor. Appellee, Romanus, filed preliminary objections in which, inter alia, he demurred to the complaint on the grounds that it failed to state a cause of action. The court below sustained the preliminary objections and dismissed the complaint. This appeal followed. The main issue thus presented is whether, accepting as true all of appellant's factual allegations, he has stated a cause of action which would

---

[1] Appellant would concede that if a councilman first resigns from council he is eligible to run for the office of mayor in this election.

invalidate the election of John T. Romanus as mayor and thus entitle him to the relief requested.

We start with the premise that absent a statutory prohibition a borough council may select one of its members to fill a mayoral vacancy. Our Legislature has not spoken on this issue and thus absent any voting illegality or other impropriety there is no impediment to the authority of council to select a fellow council member to fill a vacancy in the office of mayor. The only statutory restriction placed upon council in filling such vacancies is that the new mayor must be "a registered elector of the borough."[2] It would indeed seem counterproductive and contrary to the public interest to establish for the first time a rule that one who has been elected by his fellow citizens, served on the council, and presumably has knowledge and experience in local governmental affairs is per se ineligible to fill a vacancy in the mayor's office. We are not disposed to fashion such a categorical rule.

However, it is also well established in this Commonwealth, as well as in practically all jurisdictions, that a councilman may not vote for himself nor may he vote on any matter in which he has a personal or pecuniary interest. *Meixell v. Hellertown Borough Council*, 370 Pa. 420, 88 A. 2d 594 (1952); *Genkinger v. New Castle*, 368 Pa. 547, 84 A. 2d 303 (1951); *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 22 A. 2d 686 (1941); *Commonwealth v. Raudenbush*, 249 Pa. 86, 94 Atl. 555 (1915). Appellant contends, and we agree, this rule means that any council member-nominee for mayor could not vote for himself because of his personal interest in the result of the election. He further asserts that by arranging to trade votes, appellee and fellow council member, Bracken, in essence managed to vote for themselves. Therefore, reasons

---

[2] Act of February 1, 1966, P. L. (1965) 1656, §901, 53 P.S. §45901.

appellant, both Bracken's and Romanus' votes should not be counted, leaving Romanus with only three votes, not a majority of the entire council.

Because of the posture of this appeal we must accept all of appellant's *allegations of fact* as true. Therefore, we must accept that there was indeed some "prearrangement" between councilmen Bracken and Romanus to exchange their votes. However, this Court need not accept appellant's *conclusion of law*—that such an exchange of votes was indeed unlawful. See Goodrich-Amram, Standard Pennsylvania Practice, §1017(b)-11 at 93; §1111 (1957).

Even if we assume, arguendo, that such an arrangement to trade votes was unlawful, and those two votes were thus void, we must nevertheless reach the conclusion that the election of appellee as mayor was valid. In *Meixell v. Hellertown Borough Council,* supra, this Court was faced with this identical issue. There a nine-member borough council met to elect a new burgess (mayor). Two of the nine council members voted for themselves and their votes were declared "void and therefore a nullity." *Meixell,* supra at 422, 88 A. 2d at 595. This Court there said:

"[s]ince the vote of two councilmen was illegal and void, neither their vote nor their presence should be counted in computing a quorum or a majority.

. . .

"That left 7 valid votes—more than a quorum. Of those 7 qualified and valid votes, 4 voted for Meixell for Burgess, 2 for Councilman Judd, and 1 for Councilman Abel. A quorum being present and legally voting, and Meixell having received a majority of all the legal votes cast, he was duly elected Burgess." Id. at 424, 88 A. 2d at 595-96.

Applying the same compelling reasoning to the instant case we must conclude that if Romanus' and Bracken's votes were void and their presence thus not

counted toward a quorum, nevertheless the remaining membership still constitutes a majority and a quorum of five valid votes still remains. Section 46001 of The Borough Code specifically provides, "[a] majority of the membership of council then in office shall constitute a quorum." Act of February 1, 1966, P. L. (1965) 1656, §1001, 53 P.S. §46001. When a quorum is present a majority of that quorum can validly elect a mayor. *Commonwealth ex rel. Fortney v. Wozney*, 326 Pa. 494, 192 Atl. 648 (1937); *Commonwealth v. Fleming*, 23 Pa. Superior Ct. 404 (1903). A quorum being present and Romanus having received the votes of a majority of the quorum, he was thus lawfully elected mayor.

We agree that the Common Pleas Court of Allegheny County reached the correct result in sustaining the appellee's preliminary objections and in dismissing the complaint.

Order affirmed.

Mr. Justice MANDERINO concurs in the result.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN:

Contrary to the position of the majority, I cannot accept the premise that absent a statutory prohibition a borough council may select one of its members to fill a mayoral vacancy, and, on this ground, I respectfully dissent.

It is well established in our law that simply because the Legislature has not expressly prohibited a certain activity by a public official it follows that he may undertake such activity. As was aptly stated in *Goodyear v. Brown*, 155 Pa. 514, 26 A. 665 (1893): ". . . it does not follow that everything may be done by a public officer that is not forbidden in advance by some act of the assembly." Id. at 518, 26 A. at 666.

The question herein involved is one which has its roots in public policy and, absent a statutory directive, I find it advisable to return to the common law, the fountainhead of the rules of public policy, to ascertain a correct answer to this problem. My analysis of this question will follow a three-pronged approach, that is, an examination of treatises, rules from courts of other jurisdictions, and lastly an opinion from this Court.

Turning first to the treatises, McQuillin, the leading authority on municipal corporations, states the following rule: "Officers who have the appointing power are usually disqualified for appointment to office to which they may appoint. Such exercise of the appointive power is against public policy, and is void on its face, and the one so appointed, it has been said, is not even a de facto officer. . . . Pursuant to the general rule, a council, although possessing the power of appointment, may not select one of its own members as clerk of council, as a member of a board of assessors, or as city manager. For a like reason, a member cannot vote to confirm his own appointment to office." McQuillin, Municipal Corporations, Vol. 3, §12.75, pp. 325-26 (3rd Ed. 1963).[1] Thus, the general rule seems to be: Officers

---

[1] Similar rules are found in the following secondary authorities. See 42 American Jurisprudence, §97, p. 955 (1942) :

"97 *Restrictions As to Persons Who May Be Appointed*

"A public office is a public trust, and persons to be appointed thereto should be selected solely with a view to the public welfare. It goes without saying that the power of appointment to public office is to some degree limited by public policy and by statutory provisions which invalidate the appointment of relatives, or which make certain persons ineligible to office. An appointment of an ineligible person is a nullity.

"An officer entrusted with the power of appointment should exercise it with disinterested skill and in a manner primarily for the benefit of the public, for it is the policy of the law to secure the utmost freedom from personal interest in such appointments. So, it is contrary to public policy to permit an officer having an

who have the appointing power, or who are members of an appointing body, are disqualified from appointment to the offices to which they may appoint.

One of the first cases to adopt this rule was *Meglemery v. Weissinger*, 140 Ky. 353, 131 S.W. 40 (1910). Meglemery was a member of the appointing body which appointed him to the office of bridge commissioner. Three days after his appointment, his term of office on the appointing board expired, thus he was only holding one office. He was subsequently removed from the office of bridge commissioner and he brought suit seeking reinstatement; the court refused reinstatement, relying on the aforesaid general rule stating: "As Meglemery was on December 31, 1909, a member of the body that appointed him to fill this place, the appointment was void for reasons of public policy that are both sound and sufficient. And so we have held that in cases like this the fiscal court cannot appoint one of its members to a place that carries with it duties and compensation. . . . Nor does the fact that his term expired within a few days after his appointment, or the fact that his duties would be prescribed and his

appointing power to use such power as a means of conferring an office upon himself, or to permit an appointing body to appoint one of its own members." See 67 C.J.S. Officers, §20, p. 130 (1950):

"§20 *Power of Appointment or Membership in Appointing Body*

"It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office, so that, even in the absence of a statutory inhibition, all officers who have the appointing power are disquailfied for appointment to the offices to which they may appoint; and similarly a member of an appointing board is ineligible for appointment by the board, even though his vote is not essential to a majority in favor of his appointment, and although he was not present when the appointment was made, and notwithstanding his term in the appointing body was about to expire; nor can the result be accomplished indirectly by his resignation with the intention that his successor shall cast his vote for him."

compensation allowed by a body of which he was not a member, or the fact that he was not present with the court when his appointment was made, have the effect of changing this salutary rule. The fact that the power to fix and regulate the duties and compensation of the appointee is lodged in the body of which he is a member is one, but not the only, reason why it is against public policy to permit such a body charged with the performance of public duties to appoint one of its members to an office or place of trust and responsibility. It is of the highest importance that municipal and other bodies of public servants should be free from every kind of personal influence in making appointments that carry with them services to which the public are entitled and compensation that the public must pay. And this freedom cannot in its full and fair sense be secured when the appointee is a member of the body and has the close opportunity his association and relations afford to place the other members under obligations that they may feel obligated to repay. Few persons are altogether exempt from the influence that intimate business relations enable associates to obtain, and few strong enough to put aside personal considerations in dispensing public favors. And it is out of regard for this human sentiment and weakness, and the fear that the public interest will not be so well protected if appointing bodies are not required to go outside their membership in the selection of public servants, that the rule announced has been adopted, and ought to be strictly applied." Id. at 354-55, 131 S.W. at 41. Hence, in adopting the general rule the *Meglemery* court recognized that to operate effectively municipal appointive bodies must be free from every kind of personal interest, or influence. The central theme of the importance of freedom from influence when a person exercises judgment under his public trust was carried forward by the courts of New York in the case of *Wood*

*v. Town of Whitehall,* 120 Misc. Rep. 124, 197 N.Y.S. 789 (1923), wherein the court found that appointing power, to be exercised properly, must be carried out free from suspicion of taint, bias, or impartiality. The court stated:

"Defendant contends that the appointment was illegal, because plaintiff was a member of the appointing board. The proposition is therefore squarely presented whether an appointment by a public board, vested by statute with the appointing power, of one of its own members to the office to be filled, is a legal appointment, where there are sufficient votes for the appointee without his own.

. . .

"It seems clear to me that it would be contrary to public policy and the general welfare to uphold such an appointment. When public officers, such as the members of a town board, are vested by the Legislature with power of appointment to office, a genuine responsibility is imposed. It must be exercised impartially, with freedom from suspicion of taint or bias which may be against the public interest. An appointing board cannot absolve itself from the charge of ulterior motives when it appoints one of its own members to an office. It cannot make any difference whether or not his own vote was necessary to the appointment. The opportunity improperly to influence the other members of the board is there. No one can say in a given case that the opportunity is or is not exercised. What influenced the other members to vote as they did, no one knows except themselves. Were their motives proper, based solely on the fitness of the appointee? They may have been. Were they improper, based on the promise or expectation of reciprocal favors? They may have been. No one knows, except the parties directly interested. That is the difficulty. This is the possibility,

which the law should remove by determining such appointments to be illegal." Id. 125, 197 N.Y.S. at 790.[2]

It can be seen from these cases that the underlying philosophy for the general rule is removing the opportunity for personal influence that one member of a board may exercise over another, and the possibility of

---

[2] I also find that an analogy exists between one man exercising the appointing power, and a board exercising the appointing power. It is clear that one individual, i.e., a mayor, cannot appoint himself to an office. This rule was stated in *Commonwealth v. Douglass*, 1 Bin. 77 (1803) : "One having a discretionary authority to appoint a fit person to a public office appointing himself, seems a solecism in terms; and it cannot be deemed the fulfillment of his duty." Id. at 84. See also *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 22 A. 2d 686 (1941). If the personal interest of one man having the appointing power creates disqualification so that he cannot appoint himself, viewing the appointing board as one entity, why then should the board be allowed to appoint itself, or at least a part of itself, i.e., one member, to an office. In the *Whitehall* case, supra, the court adopted this approach in the following language: "Viewing the question from another aspect, the same result is arrived at. When the members of the board are given the appointing power, it seems necessarily implied in that power that they cannot appoint themselves. The situation is not different in principle from where the appointing power, instead of being vested in a board is vested in a single official. The mayors of most of our cities, for example, have the power to appoint a superintendent of public works, a city attorney, and various other functionaries. It has never occurred to anyone to argue that a mayor thus situated may appoint himself to these various offices, or to any one of them. How is the situation different where the appointing power is vested, not in a single individual, but in a board consisting of a half dozen individuals? Each one is a part of the board. If the board appoints one of its own members, it appoints itself, or a part of itself. It cannot be material whether the part of the board appointed participates in the act of appointment. It is still the act of the board, and, as the appointee is a member of it, the board appoints part of itself, the same as if he had actively aided. His own participation cannot matter. He has as much right to assist in the appointment of his own entity as the board has to assist in the appointment of a part of its entity." 120 Misc. Rep. 125-26, 197 N.Y.S. 791.

suspicion of such personal influence, either in the form of partiality, bias, or taint. For these very reasons the general rule was adopted by the Supreme Court of Delaware in the case of *State v. McDaniel*, 52 Del. 304, 157 A. 2d 463 (1960). In this case the Delaware Court was faced with a factual situation strikingly similar to the one at hand. In *McDaniel*, a vacancy existed in the office of mayor of the city of New Castle, one of the members of the city council had been appointed by the council to fill the vacancy. There was a statute which prohibited this action and to avoid the statute, McDaniels resigned as a member of the council and left the council room, he was then nominated and elected by the council to the office of mayor. Although this action met the requirements of the statute, the court ousted McDaniels from the office relying on the philisophy of the aforementioned common law general rule, stating: "Both the common law and the statute demand that the power of appointment be exercised fairly and impartially. In order to attain this purpose it is important that the deliberations of the appointing body not only be free from wrongdoing but free from suspicion of wrong as well. Meglemery v. Wiessinger, 140 Ky. 353, 131 S.W. 40, 31 L.R.A., N.S. 575; Parrish v. Town of Adel, 144 Ga. 242, 86 S.E. 1095; Wood v. Town of Whitehall, 120 Misc. 124, 197 N.Y.S. 789. For this reason the general law has been laid down—reinforced in many instances by appropriate statute—that it is contrary to public policy to permit a Board to exercise its power of appointment by designating some one from its own body. Parrish v. Town of Adel, supra. See 42 Am. Jur., Officers, Sec. 97, p. 955. Such purpose cannot be attained when the appointee as a member of the appointing body has the opportunity for a closer association and influence upon the members much greater than would be the case where the persons considered

for appointment were not members of the appointing body." Id. at 310-11, 157 A. 2d 466.[3]

Lastly, at least on one occasion, this Court has recognized this general rule. In *Commonwealth ex rel. McCreary v. Major*, 343 Pa. 355, 22 A. 2d 686 (1941), relying on *Meglemery*, supra, and *Whitehall*, supra, this Court stated: "Furthermore, even if respondent had not voted for his own appointment, for the other members of Council of which he was a member to have placed him on the Board of Authority would nevertheless, still have been definitely against public policy: Meglemery v. Weissinger, 140 Ky. 353; Wood v. Town of Whitehall, 120 Misc. 124, 197 N.Y.S. 789." Id. at 361, 22 A. 2d at 689. Thus, by relying on these two cases this Court took notice of the general rule with approval, a rule which the majority now rejects, without citation of authority.

In accordance with the views expressed by these courts, I would herein adopt the general rule that a member of an appointing body is not eligible for appointment to an office by that body. I view this rule as best suited to protect the general public and the

---

[3] See generally for recognition and application of the general rule:

*People ex rel. Scott v. Grivetti*, 50 Ill. 2d 156, 277 N.E. 2d 881 (1972); *Hetrich v. County Commissioners of Anne Arundel County*, 222 Md. 304, 159 A. 2d 642 (1960); *Lemon v. Fiscal Court of Casey County*, 291 S.W. 2d 572 (Ky. 1956); *State ex rel. v. Thompson*, 193 Tenn. 395, 246 S.W. 2d 59 (1952); *Smith v. McDermott*, 313 Ky. 184, 230 S.W. 2d 636 (1950); *Bradley v. City Council of City of Greenville*, 212 S.C. 389, 46 S.E. 2d 291 (1948); *State v. Bowman*, 184 Mo. App. 549, 170 S.W. 700 (1914); *Parrish v. Town of Adel*, 144 Ga. 242, 86 S.E. 1095 (1915).

There are also a number of cases controlled by statutes which have codified the common law rule: *Burtis v. Haines*, 91 N.J. L. 4, 102 A. 355 (1917); *McMahan v. Jones*, 94 S.C. 362, 77 S.E. 1022 (1913); *Gaw v. Ashley*, 195 Mass. 173, 80 N.E., 790 (1907); *People ex rel. Ellis v. Lennon*, 86 Mich. 468, 49 N.W. 308 (1891); *State ex rel. v. Kearns*, 47 Ohio St. 566, 25 N.E. 1027 (1890).

appointing bodies. For the protection of the public, it is necessary that officers holding an office under a public trust must exercise their best judgment at all times. For a situation to exist where influence resulting from close personal contact is exercisable by one member of a body upon another leaves the public in a position where it could possibly be deprived of adequate representation and good government in the best interest of the citizenry of a government unit. Likewise, this rule protects the members of the appointing body. When the body is forced to go outside its membership to select an appointee, there can be no suspicion of bias or partiality resulting from the close working association between the members of the appointing body. In the instant case, there is an allegation of trading votes, which raises the suspicion that the members of the Council were acting for their own interest, rather than that of the public. Whether or not there was a trade of votes is not the question before me, and I in no way pass upon this question. I recognize, however, that this type of allegation raises great problems, since the only parties who can answer this question are those involved. If the parties deny the allegations, doubt may still exist in the eyes of the public, and the faith in the performance of their local government may be severely shaken. Once this form of allegation is raised, the parties involved can never rid themselves of the suspicion attached to the allegation, whether it is true or not, and this is to be avoided. Consequently, I believe it is in the best interest of all concerned to adopt the general rule. The majority apparently believes the adoption of such a general rule would bar indefinitely a councilman from running for the office of mayor. Such a rule would in no way cause such an unjust result. A councilman would not be barred from running for the office in the next general election, he would only be foreclosed from being ap-

pointed to the interim vacancy. The two situations are distinctly different, for in the first the voting public controls the outcome of the filling of the office, in the latter there is the possibility of personal influence or bias, or at least a suspicion thereof, and these possibilities should be foreclosed.

Furthermore, appellee and the majority argue the statute itself makes him eligible for appointment, since the statute merely says the Council must appoint a "registered elector of the Borough," which he is. However, I would hold for the statute to make a councilman eligible, it must expressly state a councilman is qualified.

I believe this question is controlled by a rule which has its foundation on strong public policy, and to override such a policy there must be an explicit statutory directive. In *Reckner v. German Township School District*, 341 Pa. 375, 19 A. 2d 402 (1941), this Court stated: "Far from being persuasive of Younkin's right to vote himself the increased salary, the failure of the Code specifically either to authorize or to forbid the practice is conclusive against him. It necessitates an explicit direction on the part of the legislature to overthrow such a wholesome and salutary rule of the common law as that precluding a public servant from simultaneously representing both himself and his constituents." Id. at 378, 19 A. 2d at 403.

I would therefore rule that appellee is not qualified for appointment and reverse the order of the lower court.

Mr. Justice POMEROY joins in this dissenting opinion.