McAdoo Borough, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent. Teamsters Local Union No. 401, Intervenor.

Argued September 15, 1983, before Judges CRAIG, BARRY and BLATT, sitting as a panel of three.

*Joseph P. Semasek,* for petitioner.

*William J. Maikovich,* with him *James L. Crawford* and *Ellis H. Katz,* for respondent.

*Richard M. Goldberg,* for intervenor.

OPINION BY JUDGE BLATT, December 16, 1983:

McAdoo Borough (Borough) appeals here an order of the Pennsylvania Labor Relations Board (Board) holding that the Borough committed unfair labor practices contrary to provisions of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§211.1—211.13; the Collective Bargaining by Policemen or Firemen Act (Act 111), Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§217.1—217.10; and the Public Employee Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§1101.101—1101.2301.[1]

---

[1] More specifically, the Union filed charges on February 22, 1982 alleging that the Borough had engaged in unfair labor practices contrary to Section 6(1)(e) of the PLRA, 43 P.S. §211.6(1)(e) and to Act 111. A second charge was filed on March 3, 1982 by the Union alleging unfair labor practices on the part of the Borough contrary to Section 1201(a)(1), (a)(5) of Act 195, 43 P.S. §1101.1201(a)(1), (a)(5).

160

The facts in this case are undisputed. On January 1, 1982, the Borough and Local No. 401, Teamsters Union (Union) entered into two (2) one-year agreements, one agreement covering the Borough's non-professional employees and the second pertaining to all full-time and regular part-time police officers employed by the Borough. Both agreements were executed and ratified on behalf of the Borough by Council President Frank Aiello, Council Vice-President Edward Perhonitch and Council Members Hubert Hartz and William Slovik. The vote to ratify the agreements was four (4) in favor and three (3) absent. Council member Hartz was a member of the union representing both the police officers and the Borough's non-professional employees.[2] He participated in the collective bargaining process on behalf of the Borough and, as stated previously, voted for the ratification of the agreement. The Borough has since failed to implement wage and hospitalization provisions in both agreements and has refused to implement rank and seniority provisions in the agreement with the police officers.

As a result of the Borough's failure to honor the agreements, the Union filed separate charges on behalf of the police officers and of the non-professional employees, both alleging unfair labor practices. These charges were consolidated before the Hearing Examiner who filed a proposed decision finding the Borough had committed unfair labor practices in violation of Section 1201(a)(1), (a)(5) of Act 195, 43 P.S. §1101.1201(a)(1), (a)(5) and of Section 6(1)(e) of the

---

[2] Council member Hartz is represented by the Union through his employment at Consolidated Cigar, McAdoo, Pennsylvania. Prior to the time that the employment agreements were ratified by the borough council, Mr. Hartz was a shop steward for the Union at Consolidated Cigar.

PLRA, 43 P.S. §211.6(1)(e).[3] The Borough filed timely exceptions to the proposed decision with the Board which, in turn, affirmed the Hearing Examiner's order. The present appeal followed.

Our scope of review of orders of the Board is limited to determining whether substantial evidence supports the findings of fact and whether or not conclusions based on those findings are reasonable and not arbitrary, capricious or incorrect as a matter of law. *Joint Bargaining Committee of the Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board,* 68 Pa. Commonwealth Ct. 307, 449 A.2d 96 (1982). When, as here, the parties agree that no factual dispute is present, we need only review the legal conclusions of the Board. *Pennsylvania Labor Relations Board v. Association of Pennsylvania State College and University Faculties/Pennsylvania Association of Higher Education,* 24 Pa. Commonwealth Ct. 337, 355 A.2d 853 (1976).

---

[3] Section 1201 of Act 195 provides in pertinent part:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this Act.

\* \* \* \* \*

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

43 P.S. §1101.1201(a)(1), (a)(5).

Section 6(1)(e) of the PLRA states in part:

(1) It shall be an unfair labor practice for an employer—

\* \* \* \* \*

(e) To refuse to bargain collectively with the representatives of his employes, subject to the provisions of section seven (a) of this act.

43 P.S. §211.6(1)(e).

The Borough argues that, pursuant to Section 1801 of Act 195, Hartz was not entitled as a union member to represent the employer during the collective bargaining process. Section 1801(a) states:

(a) No person who is a member of the same local, State, national or international organization as the employe organization with which the public employer is bargaining or who has an interest in the outcome of such bargaining which interest is in conflict with the interest of the public employer, shall participate on behalf of the public employer in the collective bargaining processes with the proviso that such person may, where entitled, vote on the ratification of an agreement.

43 P.S. §1101.1801(a). The Borough also argues that, because of Hartz's conflict of interest, he could not vote to ratify the agreements and that, without his vote, neither agreement was legally adopted by the Borough. It concludes, therefore, that no agreements existed for it to enforce.

The Board contends, however, that the Borough's exclusive remedy under Section 1801 of Act 195 was removal of Hartz from the collective bargaining process and, that the Borough's failure to do so constituted a waiver of its remedy.[4] The Board also emphasizes that the proviso in Section 1801(a) of Act 195

---

[4] Section 1801(b) of Act 195 states that "[a]ny person who violates subsection (a) . . . shall be immediately removed by the public employer from his role, if any, in the collective bargaining negotiations or in any matter in connection with such negotiations." 43 P.S. §1101.1801(b). The Borough claims that it had no knowledge of Hartz's union membership until the vote ratifying the agreements was complete; although, it concedes that individual council members knew of Hartz's union membership. Because we decide this case on other grounds, we need not address *either the Borough's or the Union's* failure to remove Hartz from the collective bargaining process.

allows a person with a conflict of interest to vote "where entitled, . . . on the ratification of an agreement." 43 P.S. §1101.1801(a). Based on the proviso, the Board reasons that Hartz's vote to ratify the agreements would be valid, that, as a result, the agreements would be valid and that the Borough's failure to implement their provisions, therefore, would constitute an unfair labor practice.

While Section 1801 of Act 195 delineates Hartz's conflict of interest as concerns the agreement with the Borough's non-professional employees, it offers no guidance on the ethical conflicts surrounding Hartz's ratification of the agreement with the police officers.[5] And neither the PLRA nor Act 111 contains provisions dealing with the ethical considerations present when a union member ratifies an agreement on behalf of the employer.[6] Moreover, an examination of the Section 1801(a) proviso, on which the Board relies to argue the validity of the agreements, leads us to the conclusion that the efficacy of Hartz's vote is not determined by Pennsylvania statutes dealing with employer-employee relations but rather by the law governing the actions of a borough council member.[7]

[5] In defining employee, Section 301(2) of Act 195 specifically excludes those employees covered by Act 111. 43 P.S. §1101.301(2).

[6] Our Supreme Court held in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board*, 470 Pa. 550, 369 A.2d 259 (1977) that Act 111 and the PLRA are to be read *in pari materia*.

[7] In turning to The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§45101—48501 and accompanying case law, we do not suggest any conflict between that body of law and the law of employer-employee relations. Rather, we find that the language of Section 1801(a) permitting a person with an ethical conflict to vote *"where entitled, . . . on the ratification of an agreement"* directs us, in the case *sub judice*, to The Borough Code to determine whether council member Hartz was entitled to vote. 43 P.S. §1101.1801(a) (emphasis added). With respect to the police officers' agreement, having found no guidance from either the PLRA or Act 111, we must also turn to The Borough Code.

It is a well established principle of the common law that "when a quorum is present the act of a majority of the quorum is the act of the body. . . ." *Meixell v. Hellertown Borough Council,* 370 Pa. 420, 88 A.2d 594 (1952) (citations omitted). More recently, our Supreme Court has restated this common law maxim adding that a majority of those voting in the presence of a quorum can act for a limited member body, such as a borough council,[8] "in the absence of *any* language to the contrary in the relevant enabling statute." *Stoltz v. McConnon,* 473 Pa. 157, 164, 373 A.2d 1096, 1099 (1977) (emphasis in original).

Inasmuch as the case *sub judice* turns on the validity of a vote of a borough council, we must look to the language contained in the enabling provisions of The Borough Code. Two sections are instructional. Section 1006(3) of The Borough Code, 53 P.S. §46006(3), reads, in part, that all powers, other than legislative powers, "shall be exercised by vote of the majority of council present at a meeting, unless otherwise provided." Section 1001 of The Borough Code, 53 P.S. §46001 provides that "[a] majority of the membership of council then in office shall constitute a quorum." Neither section contains *any* limiting language. We must find, therefore, that the common law maxim that a majority of a quorum may act for a body has not been abrogated by the General Assembly in The Borough Code.

Turning now to the case *sub judice,* at the time of the vote on the two employment agreements, there were seven (7) members on the Borough's council. A quorum, therefore, would consist of four (4) members

---

[8] In *Bagnoni v. Klemm,* 499 Pa. 566, 454 A.2d 531 (1982), our Supreme Court mandated the anlysis to be used by Pennsylvania courts in determining whether the General Assembly had intended to abrogate the common law maxim, that a majority of those voting in the presence of a quorum can act for the body.

and a majority, or three (3) members of that quorum, could bind the entire seven (7) member body. Additionally, we note that, in voting on an employment contract, the borough council was exercising proprietary powers rather than legislative powers. And the fact that the agreements were ratified by a vote of four (4) in favor and three (3) absent highlights the crucial nature of council member Hartz's vote.

It is clear that council member Hartz, as a member of the employee union, had a personal if not a pecuniary interest in the outcome of the bargaining between the Union and the Borough. The General Assembly in Act 195 explicitly recognized this conflict in Section 1801(a). In addition, in *Raynovich v. Romanus,* 450 Pa. 391, 394, 299 A.2d 301, 303 (1973), our Supreme Court stated that ''it is . . . well-established in this Commonwealth, as well as in practically all jurisdictions, that a councilman may not vote . . . on any matter in which he has a personal or pecuniary interest.'' (Citations omitted). Thus, although the proviso in Section 1801(a) of Act 195 would permit a person with an ethical conflict, such as council member Hartz, to vote ''where entitled,'' he was not entitled to vote on either agreement pursuant to case analysis of The Borough Code, and so could not vote.

Discounting council member Hartz's vote, however, does not necessarily invalidate the two agreements. A majority of a quorum can bind the entire body, and the three remaining votes in favor of the agreements would be sufficient if a quorum were present at the January 1, 1982 council meeting. In both *Meixell* and *Raynovich,* however, our Supreme Court held that, where a borough council member has a personal or pecuniary interest in the outcome of the vote, neither his vote nor his presence can be counted towards either a majority or a quorum. We must find, therefore, that there was no quorum present at the January 1, 1982

meeting and that consequently neither agreement was legally ratified by the Borough.

Inasmuch as ethical considerations surrounding the Borough's council vote lead us to conclude that neither contract was ratified, we find it unnecessary to address those issues presented by the Board concerning the remedy available to the Borough under Section 1801(b) of Act 195, 43 P.S. §1101.1801(b).

In holding that neither employment contract is valid, we reverse the Board's conclusion that the Borough committed unfair labor practices and, likewise, reverse any and all affirmative action directed by the Board in its Final Order.

ORDER

AND Now, this 16th day of December, 1983, the order of the Pennsylvania Labor Relations Board, dated December 15, 1982, is reversed.