*6 OPINION OF THE COURT
Hilda G. Schwartz, J.
The petitioner, Gilberto Gerena Valentin, a city councilman from the Borough of The Bronx, brings this proceeding pursuant to CPLR article 78, individually and as a taxpayer, naming as respondents Stanley Simon, the Secretary of the Board of Estimate, the Mayor of the City of New York and the Comptroller of the City of New York. While designated a proceeding for judgment pursuant to CPLR article 78, the petition appears to also ask for a preliminary injunction. There is no indication that an action has been commenced. He seeks a judgment in this proceeding in the nature of mandamus (1) to enjoin the respondent Stanley Simon from holding himself out as or exercising the functions of interim Borough President of The Bronx; (2) adjudging and declaring that the purported selection of respondent Simon as Bronx Borough President by purported vote of a majority of council members representing Bronx Borough, was and is null and void; (3) directing the respondent Secretary of the New York City Board of Estimate to refrain from recognizing respondent as interim Bronx Borough President; (4) directing the respondent Mayor of the City of New York to refrain from recognizing him as interim Bronx Borough President and from permitting him to act or vote as a member of the Board of Estimate; and (5) directing the respondent Comptroller of the City of New York to refrain from recognizing him as interim Bronx Borough President.
Petitioner states, in support of his petition, that Mr. Simon, having resigned from the council on December 29, 1978, was elected on January 5, 1979 by a majority, to wit: five of the eight New York City Council members representing the Borough of The Bronx, at a meeting called by the mayor as presiding officer of such session, and that such election was void. He contends in support of such claim that a member of an appointing body cannot be appointed to office by that body and that this rule of law cannot be evaded by such member resigning his council post shortly before such election; that prior to the session convened by the Mayor, The Bronx councilmen had met and a majority of them had indicated that Mr. Simon was their choice.
Petitioner’s principal contention is described, in the language of his memorandum, as follows: "The basic question presented by this proceeding is whether the established rule of *7 law that a member of an appointing body cannot appoint one of its members can be evaded by the device of the majority of such appointing body committing themselves in caucus to appoint one of the members of the body and that member thereafter resigning from the body and immediately thereafter being formally selected by the vote of the committed caucus.”
Respondents contend that Mr. Simon was validly elected in accordance with the law and deny that he was elected as a result of prior arrangement or collusion. They assert that there exists documented contradiction of petitioner’s contention and that petitioner’s papers reveal substantial inaccuracies. Respondent Simon is named individually only and he is represented not only by the Corporation Counsel of the City of New York but by private counsel.
Respondents contend that (1) petitioner lacks standing to seek the ouster of a public official; there are disputed questions of fact; the petition does not seek solely to restrain the payment of salary to the incumbent Borough President; the exclusive remedy is a quo warranto proceeding which is instituted only by the Attorney-General under section 63-b of the Executive Law; (2) the petition is legally insufficient; the moving affidavit is inaccurate, incomplete and misleading; petitioner has failed to show irreparable harm or clear likelihood of success and the petition should be dismissed on the merits.
The petition here seeks to test the title of one holding public office. The central question here presented is the incumbent’s right to remain in office.
Subdivision (e) of section 81 of the New York City Charter provides: "Any vacancy in the office of a borough president caused by removal from the borough or otherwise, shall be filled by an election to such vacancy by majority vote of all the council members then in office representing such borough, and in case of any such vacancy it shall be the duty of the mayor forthwith to call such council members into session for such an election and to preside thereat, but he shall not vote in such election except in the case of a tie vote.”
Respondents vigorously assert that petitioner’s moving affidavit as to the events which took place is inaccurate in material respects, on its face. Petitioner claims there is no dispute as to the facts.
Respondents set forth the sequence of events leading up to *8 the election of Stanley Simon as interim Borough President of The Bronx on January 5, 1979 as follows.
By election in November, 1978, the incumbent Borough President of The Bronx, Robert Abrams, was elected to the post of Attorney-General of the State of New York. The post of Borough President accordingly became vacant as of December 31, 1978. Respondent Simon states he did not seek the office of Borough President until December 18, 1978. However, he asserts that the petitioner himself, Gilberto Valentin, also a council member from The Bronx, was an avowed candidate and that as late as December 27, 1978 petitioner, Councilman Valentin, as well as Councilmen Foster and possibly De Marco were candidates for the post of interim Bronx Borough President.
On December 27, 1978 a meeting of The Bronx members of the council was held in the offices of council member De Marco at which the selection of a Borough President was discussed. When informed that this would be the subject under discussion, council member Simon left the room. He contends that it is untrue that he was present and participated in the proceedings or that he acted in collaboration with the other council members. He asserts that up until the time of this December 27 meeting, the petitioner Valentin was an active candidate.
By letter dated December 29, 1978, as shown by the document submitted, respondent Simon resigned his post effective at the close of the business day December 29, 1978.
Prior to calling the session of council members representing The Bronx, Mayor Koch requested an opinion of the city’s Corporation Counsel regarding the interim filling of a vacancy in the office of Borough President. That opinion of the Corporation Counsel, after an extensive analysis of existing law, advised the Mayor that a member of the New York City Council may be elected by the body referred to in section 81 of the City Charter to fill a vacancy in the office of Borough President on an interim basis; that upon such election, a member of the council automatically forfeits the office of council member and that a member of the council who has resigned from the council prior to the election of a Borough President can be elected to fill the Borough President vacancy.
Petitioner denominates this proceeding as one for a judgment pursuant to CPLR article 78. The nature of article 78 proceedings is relief previously obtained by writs of certiorari *9 to review, mandamus or prohibition (CPLR 7801). The only questions that may be raised in a proceeding under article 78 so far as applicable here, are (1) whether the body or officer failed to perform a duty enjoined upon it by law; or (2) whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or (3) whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.
The "body or officer”, whose determination in electing Mr. Simon on January 5, 1979 petitioner is challenging, is the body comprised of the council members representing the Borough of The Bronx. They are not joined as respondents in this proceeding, nor were they given notice of it.
While designated an article 78 proceeding, the petition also appears to ask for preliminary injunctive relief as to respondent Simon, respondent Mayor of the City of New York and respondent Comptroller of the City of New York. In this regard, petitioner has not established that immediate and irreparable injury will result unless preliminary injunctive relief is granted. The question of the binding nature of the acts performed by de facto public officials has long been settled in this State. (Matter of Schick v Impellitteri, 122 NYS2d 729, affd 282 App Div 663.) On the other hand, the harm resulting from preliminary injunctive relief would prevent public business from being effectively carried on. (See Curtin v Barton, 139 NY 505; Sylvia Lake Co. v Northern Ore Co., 242 NY 144, cert den 273 US 695; Matter of Sherrill v O’Brien, 188 NY 185.) .
Petitioner is contesting respondent Simon’s title to his office on the "basic question” as stated in petitioner’s memorandum "whether the established rule of law that a member of an appointing body cannot appoint one of its own members can be evaded by the device of the majority of such appointing body committing themselves in caucus to appoint one of the members of the body and that member thereafter resigning from the body and immediately thereafter being formally selected by the vote of the committed caucus.”
This statement by petitioner of alleged events is vigorously disputed by respondents as inaccurate, untrue and misleading. Does the petitioner initiating this article 78 proceeding as a taxpayer and council member, have the standing to contest a public official’s right to remain in office, contesting his title to *10 office or is a proceeding in the nature of quo warranto the exclusive remedy?
The writ of quo warranto was one of the most ancient writs known to the common law. While the writ of quo warranto has been abolished, it has been succeeded by statutory remedies (Executive Law, § 63-b; Matter of Smith v Dillon, 267 App Div 39; People ex rel. Hatzel v Hall, 80 NY 117). The term "quo warranto” is used to describe not only prior proceedings under the old common-law writ of quo warranto but also proceedings under succeeding statutes which provide statutory remedies in the nature of quo warranto. Section 63-b of the Executive Law provides that the Attorney-General may maintain an action, upon his own information or upon the complaint of a private person, against a person who usurps, intrudes into or unlawfully holds a public office. Judgment may be rendered as justice requires.
As to the two questions before this court, viz., petitioner’s standing to institute these proceedings and the merits of his claims, the matter of the merits deserve initial analysis.
Petitioner cites in support of his contention that a member of an appointing body cannot be appointed by that body, even if he resigns prior to such appointment, the cases of Macrum v Hawkins (261 NY 193) and Wood v Town of Whitehall (120 MisC 124, affd on opn below 206 App Div 786).
In Macrum the appointments of three members of the Board of Supervisors of Suffolk County to serve as members of a regional planning board was raised as affecting the validity of the resolutions of the board of supervisors; that is, the holding of dual office. The Court of Appeals held there that the fact that the supervisors, instead of confiding the work to three of its members, as a committee of itself, chose to appoint the three to constitute a planning board to do the identical work, did not make them independent public officers, whose functions, as such, were incompatible with the exercise of their functions as supervisors. The court, in Macrum, in obvious reference to the holding of dual office said (p 201): "There are many authorities which hold that a member of a public board is not eligible to receive an appointment to an independent office at the hands of such public board”, citing a number of out-of-State authorities and Wood v Town of Whitehall (supra).
Thus the single Court of Appeals decision to cite Wood cites Wood in support of a prohibition against dual office holding.
*11 In neither Macrum nor Wood was there a situation where a member had resigned prior to his appointment. Both Macrum and Wood, cited by petitioner as his principal authorities, refer to individuals holding two posts simultaneously, that is dual office holding. In Wood, plaintiff Wood continued in office as a member of the town board that appointed him while serving as a Police Justice. It is significant that the two New York cases cited in Wood (David v Thomas, 33 Barb 287; and Beebe v Supervisors of Sullivan County, 64 Hun 377, affd on opn below 142 NY 631) relate to the evils of holding two or more incompatible positions.
An examination of the record of the Wood case makes it clear that the issue involved was that of dual holding. Plaintiff-Appellant Wood continued to hold both positions. This point, although not clearly reflected in the opinion, was not in dispute as evidenced by the record itself. The court in Wood found as a matter of fact: "That at the time of the said appointment of plaintiff as such police justice plaintiff was a member of said town board” and as conclusions of law: "That the town board of the defendant, the town of Whitehall were without authority to appoint a member of said board to the said office of police justice of said town.”
The Wood case made no holding prohibiting a body from appointing or electing a former member to an independent public position.
The Wood case is cited by petitioner as the "controlling doctrine” in this State and a "solidly established rule of law”, to wit: that "A member of a government body which has the power to make an appointment to a public office, cannot be appointed to such office by his fellow members of the appointing body.” Petitioner’s repeated reference to appointment of a "member” of the appointing body, and his quoting of similar references from both Wood and Macrum, fails to take into consideration that respondent Simon at the time of his election was not a member of the appointing or electing body. Indeed, as petitioner himself points out in his reply memorandum, the election of Mr. Simon was not made by the city council but by a group of council members from one of the city’s five boroughs. At the time of the election on January 5, 1979, Mr. Simon was neither a member of the city council nor of the actual electing body, the group of council members from the Borough of The Bronx.
As to the language in the Special Term opinion in Wood *12 which went beyond the issue before it, is the conclusion (120 Misc 124, 130, supra): "It is against good conscience that a board with appointing power should appoint one of its own members to office. Such practice, even when not forbidden by specific enactment, and when the vote of the appointee is not necessary to the appointment, is against public morals. It cannot but result in evil.”
Again, even in this statement, the court makes reference to "one of its own members” not to a former member.
Following the Wood decision over 50 years ago, an attempt appeared to have been made to correct possible misreading of its dicta. The Legislature amended subdivision 5 of section 64 of the Town Law to provide that "[a] person, otherwise qualified, who is a member of the town board at the time the vacancy occurs may be appointed [by the town board] to fill the vacancy provided that he shall have resigned prior to such appointment.”
The common-law concepts suggested in Wood, principally in its dicta, have been abrogated with respect to the City of New York, by State law and the city charter. One such codification is the General City Law. Section 3 of that statute provides that, "No member of the common council of any city shall, during the period for which he was elected, be capable of holding under the appointment or election of the common council any office the emoluments of which are paid from the city treasury * * * provided, however, that in any city having a city manager or council-manager form of government in which a mayor and vice-mayor may be elected or appointed from the membership of its council, such mayor and vice-mayor may, in addition to the emoluments received as councilman, receive compensation for their services from the city treasury as mayor and vice-mayor.”
But there is grave doubt as to whether section 3 of the General City Law is applicable to the City of New York. The words "common council” are a well-recognized legal term of art designating the legislative body of "second class cities” (Second Class Cities Law, § 30). The local legislative bodies of those cities are specifically designated as "common councils” by State law. (Second Class Cities Law, § 31.) Where the Legislature refers to the local legislative body of another class of city, it does so by specific reference. (See Education Law, § 2556, subd 6; General Business Law, §§ 7, 14, 15, 22.) In the General City Law, there are two essentially identical provi *13 sions, one referring to the "common council” of cities and the other specifically referring to New York City’s local legislature. (Former General City Law, §§ 12-a, 12-b, repealed L 1955, ch 522.) It is of significance, further, that at the time the General City Law provision was adopted, the local legislature in New York City was called the "Board of Aldermen” (1901 New York City Charter, § 17). It is not likely that the Legislature would apply the term "common council” to the New York City body. Of even more consequence was the fact that the Legislature enacted a separate provision on the same subject applying only to New York City. (1901 New York City Charter, L 1901, ch 466, § 36.) As it appears in the 1901 New York City Charter, it reads: "No member of the board of aldermen shall, during the term for which he was elected', be eligible or be appointed to any other office under the city” (emphasis added).
However, in 1903 (L 1903, ch 304) the Legislature amended section 36 to read: "No member of the board of aldermen shall, while serving as a member of such board, be eligible to be appointed to any other office under the city” (emphasis added).
This amendment by the State Legislature plainly showed the intention of the Legislature to make it clear that the only prohibition with regard to appointment to another post by the city’s legislative body, was to dual office holding and that there was no prohibition against selection of a former member of the legislative body for another office.
Subsequent city charter amendments have carried forward the provisions of section 36. The present city charter contains a comprehensive legislative direction that governs the ethical behavior of members of the city council and provides careful safeguards against any abuse of office by council members in New York City, such as concerned the court in Wood. These provisions of law do not prohibit a council member from being chosen by his fellow members to hold another office. By being so elected, however, he automatically forfeits his position as a council member.
There is no provision of the city charter or other law which prohibits a council member who has resigned prior to such election from being elected to fill the vacancy of Borough President pursuant to section 81 of the Charter.
That this has been the acknowledged and accepted status of the law for many decades is indicated in the public record *14 which shows that three of the five current Borough Presidents were council members who resigned their council positions prior to their election to fill vacancies in the office of Borough President pursuant to section 81 of the Charter. In addition, the public record shows that two previous Borough Presidents were also members of the council who resigned prior to their election as Borough President.
Petitioner does not deny that he, himself a council member, was an active candidate for the interim vacancy prior to January 5, 1979, as were one other and possibly two other members of the council.
It is emphasized, and both petitioner and respondents agree, that the selection of an interim Borough President is made, not by the city council, but by a particular body established by the city charter convening by the Mayor specifically for the purpose of making such election, with the Mayor presiding and having a vote in the event of a tie.
This is a separate and distinct group of electors to be distinguished from the city council itself. The city council consists of the council president and 43 members. The group of electors comprised eight members and the Mayor, not a council member, and from another branch of government.
The principle enunciated in Wood, which went beyond the actual issue of dual office holding before the court, has been cited in opinions of the Attorney-General and of the State Comptroller. That principle has been legislatively overruled at least twice. Once, when the Legislature amended the Town Law to permit the board of supervisors to select one of its former members to fill vacant offices, provided he first resigned as board member (L 1952, ch 559, amdg Town Law, § 64, subd 5) and, again, when the city council, in reaction to an opinion of Corporation Counsel Richland, citing Wood as an authority, adopted a local law amending the city charter providing that a board member may be selected as a district manager if upon being selected he resigns from the board. (New York City Charter, § 2800, subd f.)
In summary, the holding of authorities cited by petitioner including Wood and Macrum do not prohibit a former city council member from being selected as interim Borough President pursuant to section 81 of the City Charter. To the extent that Wood enunciated correct common law, those principles have been codified and where different from applicable statutory law, the common-law principles stated in Wood have been *15 specifically abrogated by legislative enactment. (New York City Charter, §§ 33, 1115, 2604; Town Law, § 64, subd 5; General Municipal Law, art 18.)
On January 5, 1979 when the Mayor convened the body of electors as provided in section 81 of the City Charter, the respondent Simon was not a member of the city council. He was not a member of the city council at the time the vacancy in the office of Borough President occurred on January 1, 1979. He was not a member of the body of electors convened pursuant to section 81 of the charter, to elect an interim Borough President.
Petitioner has failed to establish that any body or officer failed to perform a duty enjoined upon it by law or has proceeded or is proceeding without or in excess of jurisdiction; that a determination has been made in violation of lawful procedure; affected by an error of law; or was arbitrary, capricious or an abuse of discretion. On the merits, therefore, this petition must be dismissed.
Since the court finds that the petition should be dismissed, it is not necessary for the court to determine whether the petitioner has standing to challenge the election or whether the proper procedural vehicle in which to challenge such an election is a proceeding in the nature of quo warranto rather than an article 78 proceeding. (Matter of Anderson v Krupsak, 40 NY2d 397.)
Petitioner not having established grounds for the relief requested, the petition is denied in all respects and respondents’ cross motion to dismiss the petition is granted.