Community College of Beaver County *v.*
Aliquippa School District.

Argued October 19, 1971, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, MAN-
DERINO, MENCER and ROGERS. Judge WILKINSON, JR.,
disqualified himself. Judge MANDERINO did not par-
ticipate in the decision.

484

*H. Beryl Klein,* for appellant.

*Harold E. Craig,* with him *Craig & Ruffner,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 22, 1972:

This appeal comes to us from the Court of Common Pleas of Beaver County where judgment was entered for appellee, Community College, for $60,653.53. Appellee complained in assumpsit that this amount was owed by appellant as its pro rata share of appellee's school subsidy 1967-68 budget. The essence of the complaint is that appellant is a member of Community College's local sponsorship organization together with other area school districts and that this obligation came into being as a result of a plan of sponsorship which joined appellant with the other members of the sponsorship organization.

The following sequence of events developed this litigation: A proposed plan for a Community College of Beaver County was prepared and approved by the State Board of Education. The plan included provisions for allocating financial responsibility for the Community

College among the members of the local sponsor.[1] Appellant, by proper action of its Board of School Directors on February 10, 1966 and April 19, 1966, endorsed the plan and constituted itself as a constituent member of the local sponsor of the Community College. The total number of school districts constituting the local sponsor numbered 25.

In July of 1966, a convention of the constituent members of the local sponsor was called and was attended by 59 of the 157 directors of the local school districts, including six Board members of the appellant school district. Having received the highest number of votes cast by the members present at the convention, a Board of nine Trustees was declared to have been elected. The Board requested payment by the sponsor of the College's expenses for the period expiring June 30, 1967 which was a part of the plan. Appellant's share was $12,075 which was paid in installments. The Board of Trustees then proceeded with the organization and operational plans of the Community College.

In January of 1967, the Community College submitted articles of agreement purporting to serve as a formal delineation of the financial responsibilities of each school district as set forth in the initial agreement which formed the sponsorship organization. These proposed articles were amended in February of 1967. At this point, appellant, the school district, refused to approve either the original or the amended articles of agreement.

The Board prepared a budget for the school year 1967-68 and submitted the same to the members of the

---

[1] The provisions for allocating financial responsibility were based on the percentage of the combined total assessed value of all the sponsoring school districts of the College which lies within the boundaries of the individual school districts which are members of the local sponsor.

local sponsor. Appellant refused to approve this budget and did not allocate any funds to cover its responsibility to the College.[2]

On February 20, 1967, appellant's Board of School Directors authorized the submission of a petition to the Pennsylvania State Board of Education requesting the withdrawal of the Borough of Aliquippa as a sponsor of the Beaver County Community College. This petition was denied.

Ever since the filing of that petition the School District has not approved the budgeting of any funds for payment to appellee nor has it participated in the activities of the appellee, except to enjoy the academic participation by its children.

In this factual setting, appellant contends that it is not indebted to appellee because the Board of Trustees was not properly established by reason of its failure to comply with the "one-man, one-vote" principle and further because the Board of Trustees was elected by a vote taken which represented less than a majority of the eligible school districts in participation. Appellant also denies liability asserting that it had not in fact become a member sponsor which justified its refusal to approve appellee's final plans, because it merely adopted the *proposed* plan for a community college.

We affirm the judgment of the lower court.

Appellant, in pressing his initial contention, relies on *Hadley v. Junior College District,* 397 U.S. 50 (1970) to support the proposition that the election of the trustees here violated the one-man, one-vote rule interpreting the Equal Protection Clause of the Fourteenth Amendment. The United States Supreme Court

---

[2] Because the appellant did not budget funds for payment to the College, its budget was not approved by either the Beaver County Board of School Directors or by the Pa. State Board of Education.

there held that whenever a state or local government decides to select persons to perform governmental functions by popular election, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, so far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials. The Court, in that case, also reaffirmed the validity of *Sailors v. Board of Education,* 387 U.S. 105 (1967) which held that the one-man, one-vote principle did not apply to a system by which nonlegislative officials are appointed rather than elected. The Court, in *Hadley, supra* at 58, noted ". . . where a state chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws."

The import of these two cases taken together is that once a state has decided to have governmental officials chosen by election, whether their function be legislative or administrative, the one-man, one-vote principle applies. *See Hadley, supra* at 54-55. Further, if the function of the official is nonlegislative, and the system of selection is appointive and not elective, the one-man, one-vote principle does not apply. *See Sailors, supra* at 108. A state, however, may not avoid the one-man, one-vote principle by providing an appointive system for legislative officials. *Dusch v. Davis,* 387 U.S. 112 (1967).

Appellant, recognizing these distinctions, contends that the Board of Trustees is legislative in character and so it must be selected according to the one-man, one-vote principle. We do not agree.

The powers of a Board of Trustees of a Community College are limited by the Community College Act, Act of August 24, 1963, P. L. 1132, as amended, 24 P.S. §§5202-5214. The Act provides that ". . . [t]he Board of Trustees shall supervise the expenditure of appropriations made by the local sponsor and shall conduct the business affairs of the community college in accordance with the rules, regulations and procedures approved by the local sponsor . . . ." 24 P.S. §5206(b). As recognized by the Pennsylvania Supreme Court in *Rettig v. Board of County Commissioners*, 425 Pa. 274, 277, 228 A. 2d 747 (1967), this section ". . . now vests all fiscal authority, both the expenditure and raising of funds, in the local sponsor. That the actual administration of the operations of the community college is vested in the board of trustees poses no constitutional issue, . . . powers of this nature are frequently vested in other bodies subject to the general and fiscal supervision of a local governing body." Thus, the spending power is vested in the local sponsor and supervision is vested in the Board of Trustees. Moreover, the other activities of the Board as enumerated in the stipulation of facts are not sufficient to categorize the Board's function as legislative, since the United States Supreme Court determined that the functions of a Board with powers similar to the powers of the college's trustees were administrative. *See Sailors, supra* at 110 and n. 7.

Under the rules of *Hadley, Sailors* and *Dusch, supra,* the nonlegislative nature of the Board of Trustees precludes any requirement that Trustees be elected. Since the State has not provided for election in this situation, the one-man, one-vote principle is not applicable.

Appellant's next contention is that the Board of Trustees was improperly established by reason of the fact that the Board was elected by a vote taken when

less than a majority of the eligible school directors participated. Although this is so, it does not invalidate the selection of the Board of Trustees.

The statute which provides for establishment of the Board, Act of August 24, 1963, P. L. 1132, §5, 24 P.S. §5205(a) provides: "The board of trustees . . . shall be elected by the vote of a majority of the members of the governing body or bodies . . . ." Our Supreme Court, when considering the question presented here, has consistently held that approval of any proposition need only be by a majority of those *voting* thereon unless a contrary legislative intent is clearly expressed in the statute. *Heuchert v. State Harness Racing Commission,* 403 Pa. 440, 170 A. 2d 332 (1961); *Munce v. O'Hara,* 340 Pa. 209, 16 A. 2d 532 (1940). The rationale of this rule is that there is no way in which to compel the vote of all competent electors and those who are unwilling or unable to vote must be bound by the majority vote of those who do cast a vote. *See Heuchert, supra* at 450.

In *Munce, supra* at 211, it was stated: "[W]here a statute provides for a vote of 'a majority of the voters,' 'a majority of the legal voters,' 'a majority of the qualified voters,' etc., all that is required is a majority of those actually voting, unless a contrary legislative intention is very clearly expressed." We are of the view that this rule and the reasoning for it applies in the instant situation and so the appellant's contention herein advanced must topple.

Having determined that the Board of Trustees of Beaver County was properly established,[3] the remaining issue to be resolved is whether defendant is liable

---

[3] Since we have determined that the Board was properly established, there is no need to address ourselves to the question of whether the college was immune from challenge as a *de facto* college.

under some contractual obligation. Appellant contends its obligation ended when it made its initial advancement on the ground that it adopted the proposed plan only and subsequently refused to approve the final plans for the community college. Thus appellant would have us decide that it was never a member of the local sponsor of Beaver County Community College. The Community College Act as we read it compels disagreement.

We hold that the adoption by the appellant of the proposed plan inextricably bound it as a member of the local sponsor within the meaning of the Community College Act, *supra*. Section 2 of that Act, 24 P.S. §5202 provides: "(2) 'Local sponsor' shall mean a school district or a municipality or a county board of school directors or any combination of school districts, municipalities or county boards of school directors which participate or *propose to participate* in the establishment and operation of a community college." (Emphasis supplied)

The language permits no other interpretation. When a local school district, acting through its directors as in the instant case, proposes to participate in the establishment of a community college, it is included as a member of the local sponsor. Appellant's adoption of the proposed plan for establishment of Beaver County Community College is without doubt a proposal "to participate in the establishment and operation of a community college" within the meaning of Section 5202.

Once a local school district is a member of a local sponsor of a community college, it may not withdraw that sponsorship without the approval of the State Board of Education, Section 11 of the Community College Act, 24 P.S. §5211. Although appellant sought to withdraw from the plan, its application was denied. This being so, appellant was and still is a member of

the local sponsor and is obligated to meet its pro rata share of expenses.

Once a local district becomes a member of the local sponsor as provided by the statute, the community college must be able to rely on status when it enters into financial commitments for its establishment and administration. A member is not helpless. If it objects to particular items in the budget, or to the budget in general, it may look to the approval process as prescribed in the articles of agreement. For example, opposition need only muster the votes of one more than one third of the member districts[4] to defeat the budget.[5]

Finally, appellant, in pursuit of its contention, argues that it did not budget funds in its local budget for the school year in question. Since the Public School Code, Act of March 10, 1949, P. L. 30, Art. VI, §§608, 609, 24 P.S. §§6-608, 6-609, as amended, proscribes the authorization payments for unbudgeted items it could not pry open the coffers. *Schofield v. Donato,* 429 Pa. 435, 440, 240 A. 2d 541 (1968) disposed of this argument by holding that ". . . it [the Public School Code] does not apply to the creation and administration of a community college by the district, alone or with others."

Order affirmed.

---

[4] An affirmative vote of two-thirds of the member districts is required for budget approval.

[5] The lower court in the instant case correctly disposed of the issue of budget approval in the following language in its opinion. "Although the defendant did not approve the budget the fact that more than two-thirds of the constituent members of the local sponsor did approve the budget indicates a clear compliance with the terms of the Act as far as approval of the local sponsor is concerned. In the case of Schofield v. Donato . . . the Supreme Court of Pennsylvania . . . in effect, held that the Community College Act did not require an approval of the annual budget by every member of the local sponsor; and that the courts could not impose any standards over and above those required by the legislature in the Community College Act."