560 A.2d 276

**Glover M. BEH, Appellant,**

v.

**The CITY OF SCRANTON and the Council of the City of Scranton and Moses Taylor Hospital, Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1989.

Decided June 13, 1989.

Brion W. Kelley, Kingston, for appellant.

Andrew Hailstone, Stephen W. Saunders, Scranton, for appellee, Moses Taylor Hosp.

Robert T. Gownley, Jr., Acting City Sol., Scranton, for City of Scranton.

James W. McNulty, Sol., Scranton, for City Council.

Before CRAIG and McGINLEY (P.), JJ., and NARICK, Senior Judge.

CRAIG, Judge.

Glover M. Beh appeals an order by President Judge Walsh of the Court of Common Pleas of Lackawanna County which upheld the City of Scranton's amendment of its zoning ordinance to rezone land owned by Moses Taylor Hospital (MTH) from R–1 to C–2. We affirm.

On November 25, 1987, MTH applied to the City Council of Scranton for an amendment to the Scranton City Zoning Ordinance to rezone 7.57 acres of land from R–1 classification to C–2 so that MTH could construct a medical office building on that site. MTH submitted an application in support of the proposed amendment and preliminary plans

for the building. The city planning commission reviewed the application and, following a public hearing, voted unanimously not to recommend to council that the proposed rezoning amendment be enacted.

The council held a public hearing on March 30, 1988, and heard testimony from supporters and opponents of the application. On April 6, 1988, council voted in favor of the proposed amendment by a 3–to–1 margin, with one abstention. The mayor of Scranton signed the amendment on April 7.

On April 21, 1988, Beh, alleging procedural defects in the enactment of the amendment, appealed the city's decision to the Common Pleas Court of Lackawanna County. MTH filed a notice of intervention on May 11. On June 21, an evidentiary hearing was held before Judge O'Malley of the common pleas court concerning Beh's request for a supersedeas and MTH's petition to require Beh to post a bond.[1] On September 12, 1988, after hearing arguments, President Judge Walsh denied Beh's appeal.

Beh now appeals to this court contending that, because section 7.804 of the City of Scranton Zoning Ordinance and section 659 of the Second Class A City Code[2] require a two-thirds or three-fourths majority voting margin, respectively, for amendment adoption when objectors present a proper written protest, council's majority vote was insufficient. Alternatively, Beh asserts that MTH's application for rezoning, accompanied by various other documents, was actually a request for a curative amendment which MTH did not file in timely fashion.

Before we can determine whether a super-majority voting margin is necessary to adopt the proposal, we must first resolve the issue of whether MTH's application is, in fact, a request for a curative amendment.

1. Judge O'Malley, in a decision handed down after President Judge Walsh's opinion, denied the stay and did not address the issue of the bond, which MTH did not pursue in connection with the appeal to this court.

2. Act of June 21, 1919, P.L. 570 *as amended,* 53 P.S. § 30659.

■   Section 609 of the Pennsylvania Municipalities Planning Code (MPC)[3] specifies the procedure for adopting all zoning ordinance amendments. This section does not specify any content requirements to be included when landowners seek amendments from the governing body by a legislative petition. However, section 609.1 of the MPC, 53 P.S. § 10609.1, titled "Procedure Upon Curative Amendments," states that "[a] landowner who desires *to challenge on substantive grounds the validity of an ordinance ...* may submit a curative amendment to the governing body *with* a written request that his challenge *and* proposed amendment be heard and decided as provided in section 1004." (Emphasis added.) Section 1004 of the MPC, 53 P.S. § 11004, also indicates that a curative amendment challenge is different from an ordinary rezoning request by providing the following:

Section 1004.   Validity of Ordinance; Substantive Questions; Landowner Appeals.—

(1) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either:

(a) To the zoning hearing board for a report thereon under section 910 or 913.1; or

(b) To the governing body *together with* a request for a curative amendment under section 609.1.

(2) The submissions referred to in subsection (1) shall be governed by the following:

(a) The landowner shall make a written request to the board or governing body that it hold a hearing on his challenge. The request shall contain a short statement reasonably informing the board or the governing body of

3.   Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10609. We note that, although the Act of December 21, 1988, P.L. 1329, No. 170, has further amended the MPC and altered the section numbers, the pre–1988 version of the MPC governs this case and is cited accordingly.

the matters that are in issue and the grounds for the challenge.

. . . .

(d) If the submission is made to the governing body under subsection (1)(b), the request *shall be accompanied by an amendment or amendments to the ordinance proposed by the landowner to cure the alleged defects therein.* (Emphasis added, footnotes omitted.)

In *McCandless Township v. Beho Development Corp.*, 16 Pa.Commonwealth Ct. 448, 332 A.2d 848 (1975), this court was confronted by the issue of whether a letter requesting a zoning change was a request for rezoning or a curative amendment. The landowner, like MTH, did not submit any draft of the proposed amendment in ordinance form. The *Beho* court, in holding the letter to be merely a request for rezoning, noted that:

The facts of this case point out the necessity for strict compliance with all the procedural requirements found in sections 1004 and 609.1 of the MPC, 53 P.S. §§ 11004 and 10609.1, so that local governing bodies can distinguish between *requests for rezoning and challenges to the validity of ordinances.*

*Id.,* 16 Pa.Commonwealth Ct. at 452, 332 A.2d at 851 (emphasis added).

Beh cites the case of *Zoning Hearing Board of Willistown Township v. Lenox Homes, Inc.,* 64 Pa.Commonwealth Ct. 74, 439 A.2d 218 (1982), for the proposition that MTH's application is a request for a curative amendment. However, Beh's reliance is misplaced because *Lenox Homes* merely sets forth the requirements of what an application must contain when a landowner is alleging that an ordinance is invalid or confiscatory in its effect. No such challenge has been made by MTH.

Additionally, Beh states in his brief that MTH, "in correspondence to Council's Solicitor and submitted into evidence by Appellants counsel at the public hearing before Council, labeled its application as a curative amendment (Rep.R. Page 12a)." The cited correspondence is not in the record,

but, even if we assume that MTH, at some juncture, so labeled its application, the label does not cause it to be such when there clearly is no validity challenge.

Because the MPC distinguishes a written rezoning request to a governing body from a curative amendment, and because there is no proceeding challenging the validity of the ordinance here, we conclude that MTH is not requesting a curative amendment. Therefore, we have no need to analyze the timeliness issue related to the filing of a curative amendment.

■ The second issue is whether a super-majority vote is required to enact the rezoning proposal. Beh relies on section 7.804 of the ordinance and section 659 of the Code as authority that a super majority is necessary. MTH contends that the MPC provides the applicable regulating authority.

Section 7.804 of the ordinance provides:

7.804 *Two–Thirds Majority Required.* In case of a protest against such change [amending, supplementing, changing, modifying, or repealing the ordinance], signed either by the owners of thirty-three and one-third (33⅓ percent or more either of:

(a) The area of the lots included in such proposed change, or of;

(b) The area of those lots immediately adjacent to said affected properties, including also all lots any part of which lies within one hundred (100) feet of the boundary of the area of such changes, such amendment shall not become effective except by the favorable vote of two-thirds (⅔) of the members of the City Council.

Section 659 of the Code requires that:

[I]f a protest against a proposed amendment, supplement, or change be presented, duly signed by the owners of twenty (20) per centum or more of the frontage proposed to be altered, or by the owners of twenty (20) per centum of the frontage immediately in the rear thereof, or by the owners of twenty (20) per centum of the frontage directly

opposite the frontage proposed to be altered, a three-fourths vote of the members of council shall be required....

However, the MPC nowhere contains any requirement of a super-majority for the passage of amendments. Because the council's vote of 3-to-1 with one abstention equals a 60% majority, it is essential that we ascertain which authority takes precedence.

Although the MPC has not expressly repealed the Second Class A City Code, section 1202 of the MPC, 53 P.S. § 11202, provides that "[a]ll other acts and parts of acts are repealed insofar as they are inconsistent herewith." Additionally, this court has recognized that "the terms of the MPC take precedence over and invalidate, to the extent of their inconsistency, all local zoning enactments."[4] *Cohen v. Ford,* 19 Pa.Commonwealth Ct. 417, 423, 339 A.2d 175, 178 (1975).

Scranton is a home rule city,[5] and the Home Rule Charter and Optional Plans Law (HRCL)[6] provides an indication that the intent of the legislature is to promote uniformity by having the MPC supersede other land-use regulations and local ordinances. Section 302 of the HRCL, 53 P.S. § 1-302, provides the following:

> § 1-302. Limitation on municipal powers
>
> (a) With respect to the following subjects, the home rule charter adopted in accordance with the provisions of this act shall not give any power or authority to the municipality contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable to a class or classes of municipalities:
>
> ....
>
> (10) Municipal planning under the provisions of the act of July 31, 1968 (P.L. 805, No. 247), known as the 'Penn-

4. The MPC does not govern Philadelphia, Pittsburgh, or zoning enacted by Allegheny County.

5. 335 Pa.Code §§ 11.1-101—11.15-1501, adopted May 21, 1974.

6. Act of April 13, 1972, P.L. 184, *as amended,* 53 P.S. §§ 1-101—1-1309.

sylvania Municipalities Planning Code.' (Footnote omitted.)

. . . .

(c) Acts of the General Assembly in effect on the effective date of this act that are uniform and applicable in every part of the Commonwealth shall remain in effect and shall not be changed or modified by this act. Acts of the General Assembly enacted after the effective date of this act that are uniform and applicable in every part of the Commonwealth shall supersede any municipal ordinance or resolution on the same subject.

In *Horsham Township Council v. Mintz*, 39 Pa.Commonwealth Ct. 408, 395 A.2d 677 (1978), this court held that a referendum provision of a home rule charter was not applicable to ordinances relating to land use planning and zoning enacted pursuant to authority of the MPC because it violated section 302(a)(10) of the HRCL.

Analogous to the present factual situation is the case of *Minshall v. Board of Supervisors of Ferguson Township*, 50 Pa.Commonwealth Ct. 541, 413 A.2d 1165 (1980). The issue in *Minshall* revolved around a home rule charter which gave the electorate the power to adopt or reject an initiative proposing a zoning amendment if the board failed to act upon the initiative within sixty days. The court held that the charter violated HRCL section 302(a)(10) in two ways. First, the charter was inconsistent with section 601 of the MPC, 53 P.S. § 10601, which vests the power to enact, amend and repeal zoning ordinances in the governing body of each municipality. More significantly, the court recognized that "[s]ection 609 of the MPC ... places no limitation of time on the Board within which it must act upon a request for rezoning," *Minshall*, 50 Pa.Commonwealth Ct. at 545, 413 A.2d at 1167, and therefore, the charter's sixty-day requirement violates the MPC.

Beh's factual situation is identical to *Minshall* in that the super-majority requirement contained in the ordinance and the Code is inconsistent with the MPC's silence on the matter of a required voting majority.

Furthermore, a second inconsistency, the notice provision, exists between section 659 of the Code and the MPC. Whereas section 107(18) of the MPC, 53 P.S. § 10107(18), provides for notice to be "published once each week for two successive weeks in a newspaper of general circulation in the municipality," section 659 of the Code requires "notice of hearing to be published for ten consecutive days in two (2) daily newspapers of general circulation in said cities."

■ The legislature and courts have strongly indicated that even home rule cities cannot depart from the uniform approach to land-use regulations embodied in the MPC. Because section 7.804 of the ordinance and section 659 of the Code are not consistent with the MPC, and because the MPC supersedes inconsistent provisions contained in other regulatory sources, the MPC requirement of a simple majority is all that is necessary for Scranton to amend its zoning ordinance.[7]

Accordingly, we affirm the sound decision of President Judge Walsh of the Common Pleas Court of Lackawanna County permitting the City of Scranton to amend its zoning ordinance and rezone the parcel of land owned by MTH.

## ORDER

NOW, June 13, 1989, the order of the Court of Common Pleas of Lackawanna County, at No. 88 CIV 2063, dated September 12, 1988, is affirmed.

7. Even if the super-majority margin were applicable, Beh has not satisfied the protest requirement. The ordinance expressly states a protest against a change to the ordinance must be signed by the "*owners* of thirty-three and one-third (33⅓) per cent or more" (emphasis added) of lots included in or adjacent to the proposed change. The Code requires a protest to be "duly signed by the *owners* of twenty (20) per centum or more" (emphasis added) of the front, rear or opposite frontage of the frontage proposed to be altered.

Beh contends that a petition was signed by forty-three *neighbors* protesting the rezoning proposal. However, he has offered nothing to show what percentage of *landowners* are included among the signees of the alleged protest petition. Because a petition signed by "neighbors" does not comply with the requirements of the ordinance or the Code, Beh's protest was never sufficiently submitted.