Stanley G. MAKOROFF, Trustee
for Automative Telephone,
Inc., Petitioner

v.

DEPARTMENT OF
TRANSPORTATION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2007.

Decided Nov. 30, 2007.

Reargument Denied En
Banc Jan. 24, 2008.

Robert O. Lampl, Pittsburgh, for petitioner.

Howard G. Hopkirk, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: COLINS, Judge,
SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Raising a classic question of contract formation, Stanley G. Makoroff, trustee for Automative Telephone, Inc. (ATI),[1] peti-

1. ATI filed for bankruptcy.

tions for review of an order of the Board of Claims (Board) entering a judgment of "no liability" in favor of the Department of Transportation (PennDOT) under the Commonwealth Procurement Code (Code).[2] ATI seeks lost profits resulting from PennDOT's alleged breach of contract for the supply of roadside vending services. ATI argues the Board acted arbitrarily and capriciously, abused its discretion, and acted contrary to law. Discerning no merit in ATI's assertions, we affirm.

In July 1999, PennDOT issued a Request for Bid Proposal for Vending Machine Services (RFP) for 46 rest areas on highways throughout the Commonwealth. ATI submitted the lowest bid for the sites.

PennDOT subsequently received information from CRH Catering, Inc. (Competitor), one of ATI's competitors, consisting of newspaper articles and other information relating to HSS Vending. The information revealed that HSS Vending was the subject of criminal investigations and that it violated Pennsylvania's consumer protection laws. Competitor advised PennDOT that ATI is a successor in interest to HSS vending and suggested ATI should not be awarded any contracts. PennDOT's legal department and the Attorney General's Office considered the allegations; however, near the end of September 1999, PennDOT decided to award the contract to ATI.

In October 1999, PennDOT selected ATI for a contract for 35 vending sites. Enclosed with the notice of award sent to ATI was a service purchase contract to be executed by ATI, by PennDOT's designee, by the Commonwealth Comptroller, and by PennDOT's attorney. Also, "if required," signature lines for the Office of General Counsel and the Attorney General's Office

were provided. Reproduced Record (R.R.) at 402a. Notably, the award notice indicated the contract would become effective "after all approvals have been received from the administrative and fiscal personnel in Harrisburg," and further stated no activities may be performed until the contract is fully executed. R.R. at 1158a.

ATI returned an executed contract to PennDOT. PennDOT's Director of the Bureau of Maintenance and Operations and a representative from its legal department executed the agreement. The Comptroller and Office of General Counsel subsequently signed the contract; however, the Attorney General's Office refused to execute the agreement.

The Attorney General's Office subsequently filed criminal charges against ATI's president, involving sales tax issues. As a result, the Attorney General's Office notified PennDOT it would not approve the contract.

Significant for current purposes, PennDOT never returned an executed contract to ATI, never provided a notice-to-proceed to ATI, and never communicated an acceptance of the offer to ATI. Instead, PennDOT notified ATI it would *not* enter into the contract because it determined ATI is not a responsible contractor. R.R. at 1204a–05a. Subsequently, PennDOT awarded a portion of the contract to Competitor.

ATI commenced the present action by filing a complaint in the Allegheny County Common Pleas Court. The complaint, styled as a "Complaint in Mandamus and/or for a Permanent Injunction and/or Other Equitable Relief," sought an injunction prohibiting PennDOT from awarding the contract to any other company and to "implement and perform" the contract with ATI. R.R. at 19a, 27a. ATI also

2. 62 Pa.C.S. §§ 101–4509.

sought an order requiring the Attorney General to approve the contract. Finally, ATI alleged PennDOT breached a valid contract. The parties subsequently agreed to transfer the complaint to this Court. Upon review, we transferred the breach of contract claim to the Board.

After hearing, the Board determined PennDOT did not fully consummate the contract with ATI. More specifically, the Board found PennDOT never delivered an acceptance of the offer to ATI and, as a result, a contract never formed. The Board also refused to apply equitable principles to estop PennDOT from denying the existence of a contract.

On appeal to this Court,[3] ATI argues the Board erred in finding a contract did not exist because PennDOT's representatives, who signed the contract, intended to bind PennDOT to the terms of the contract. Alternatively, ATI maintains the Board erred in denying equitable relief.[4]

ATI first asserts the Board erred in determining an enforceable contract does not exist. More specifically, it asserts a contract formed when PennDOT's representatives signed the contract with the intent to enter into a contract with ATI.

■ ATI's arguments overlook the fact that, pursuant to basic contract principles, "[m]utual assent is essential to the formation of a binding contract," and "must be manifested by one party to another." 17A Am.Jur.2d *Contracts* § 28. "It was long ago decided that the contract was completed upon the mailing of the acceptance, the early courts evidently reasoning that when the acceptance was mailed, there had been an overt manifestation of assent to the proposal." 2 WILLISTON ON CONTRACTS § 6:32 (4th ed., Richard A. Lord, 1991) (footnote omitted). The analogous rule for when acceptance takes effect appears in the Restatement (Second) of Contracts (1981) in Section 63, which states (with emphasis added): "an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent as soon as put out of the *offeree's possession* ...." *Accord* 17A Am.Jur.2d *Contracts* § 69 ("[t]o create a contract, an acceptance of an offer must be communicated to the offeror; a mere secret intent to accept is not suffi-

---

**3.** On review of a decision from the Board, our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or the findings of fact were supported by substantial evidence. *Dep't of Gen. Servs. v. Pittsburgh Bldg. Co.*, 920 A.2d 973 (Pa.Cmwlth.2007).

**4.** As a threshold issue, PennDOT argues the Board lacked jurisdiction under the Code's provisions because ATI did not file a claim with the contracting officer. We disagree. Because ATI's claim accrued in 1999, a prior version of the Code applies, which provides, in relevant part (with emphasis added):

> Applicability.—This section applies to controversies between a Commonwealth agency and a contractor which arise under or by virtue of a contract between them.... *Prior to filing a claim under this section with the [Board] the claim must first be filed in writing with the contracting officer ....*

*Former* 62 Pa.C.S. § 1712, repealed by the Act of December 3, 2002, P.L. 1147.

Here, ATI did not first file a claim with the contracting officer; rather, it initiated this action by filing a complaint in common pleas seeking mandamus and equitable relief against PennDOT. R.R. at 19a. The complaint further alleged PennDOT breached a contract. R.R. at 27a. Upon transfer to this Court by party agreement, we dismissed the mandamus and equity claims and *transferred* the remaining breach of contract claim to the Board. R.R. at 55a–57a.

Because ATI never *"filed* a claim under the [Code] with the [Board]" and, this Court *transferred* the complaint to the Board, we discern no error in the Board's ultimate conclusion that Section 1712 did not operate to preclude it from considering the merits here. *See* 62 Pa.C.S. § 1712.

cient."); Restatement (Second) of Contracts §§ 56, 102 (same).

Applying the above principles here, even if PennDOT's representatives signed the contract with the alleged intent, a binding contract could not form until PennDOT communicated an acceptance of the offer to ATI. PennDOT never notified ATI it accepted the offer; rather, it communicated a rejection. *See* R.R. at 1204a–05a. Thus, PennDOT did not accept ATI's offer and, as a result, PennDOT is not liable under a breach of contract theory.[5]

ATI alternatively argues equitable estoppel bars PennDOT from denying the existence of a contract. It asserts there is ample record evidence to support application of equitable estoppel, including: ATI performed substantial work in reliance upon PennDOT's assurances; ATI arranged for a bank loan to meet financial requirements under the contract; ATI made arrangements for insurance coverage required under the contract; and, ATI made arrangements with its vendors to secure equipment, products, and product rebates. PennDOT also urged ATI to expedite performance.

■ To warrant application of equitable estoppel, a party must demonstrate: "1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel." *City of Scranton v. Heffler, Radetich & Saitta, LLP.*, 871 A.2d 875, 881–82 (Pa.Cmwlth.2005).

■ In response to ATI's estoppel argument, the Board found:

Because ATI did not perform the work contemplated by the [contract], and because ATI was informed by PennDOT that it should not commence any work prior to receiving a copy of the fully executed contract (or at the very least a notice to proceed) and could therefore not have been induced by PennDOT to perform work on the contract prior to receipt of same, ATI has not established a factual basis to support application of equitable estoppel. . . .

\* \* \*

We further find that ATI's actions to prepare and install the vending machines prior to receipt of an executed contract (or notice to proceed), were not significant and could not have been done in reasonable reliance on any action of PennDOT because of the express instructions to undertake no work until receipt of notice to proceed.

Findings of Fact (F.F.) Nos. 20, 77 (citations omitted). These findings are supported in the record. To this end, the contracting officer credibly testified PennDOT did not induce any performance. *See* R.R. at 245a; F.F. No. 76. In addition, ATI introduced no credible evidence that PennDOT misled ATI to perform under the contract. Moreover, the RFP mandates "[a] contractor may not begin work until a contract has been fully executed and a notice-to-proceed has been given by [PennDOT]." R.R. at 377a. As previously mentioned, the award notice also notified ATI not to perform until all administrative and fiscal personnel in Harrisburg approved the contract and PennDOT issued a notice-to-proceed. R.R. at 1158a. Based on this, ATI clearly maintained a duty to inquire as to whether PennDOT fully exe-

---

**5.** PennDOT alternatively maintains a contract did not form because the Attorney General did not execute the service purchase contract.

Because PennDOT never communicated an acceptance of the offer to ATI, we need not address this issue.

cuted the contract and whether it had permission to proceed. It failed to do so. Accordingly, PennDOT is not equitably estopped from denying the existence of an enforceable contract.

Based on the foregoing, the Board is affirmed.

### ORDER

AND NOW, this 30th day of November, 2007, the order of the Board of Claims is hereby **AFFIRMED.**