IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Seda-Cog Joint Rail Authority    :
    :
          v.    :   No. 617 C.D. 2017
    :   Argued: April 10, 2018
Carload Express, Inc., Susquehanna    :
Union Railroad Company, and Northern :
Plains Railroad, Inc.    :
    :
Appeal of: Carload Express, Inc.    :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**          **FILED: May 3, 2018**

Carload Express, Inc. (Carload), a private railroad operator, appeals from an order of the Court of Common Pleas of Clinton County (trial court) granting summary judgment in favor of Seda-Cog Joint Rail Authority (Authority) and denying Carload's summary judgment motion. The Authority is subject to the Municipal Authorities Act (Act), 53 Pa. C.S. §§5601-5623. The trial court agreed with the Authority that a vote of seven of its board members in favor, three against, and six abstaining was insufficient to award an operating agreement to Carload. On appeal, we reverse the trial court's entry of summary judgment in favor of the Authority, and we remand for entry of summary judgment in favor of Carload.

## I. Background

The Authority owns and maintains rail lines in several Pennsylvania counties. The Authority contracts with a private railroad operator to provide the

actual freight services on the rail lines. The current operator is Susquehanna Union Railroad Company (Susquehanna).

In 2014, the Authority issued a request for proposals (RFP) for a new operating agreement. The RFP provided for a two-stage selection process. The first stage was open to all operators desiring to submit proposals. From those initial proposals, the Authority selected three operators to participate in the second phase. In the second phase, the Authority evaluated those three operators and assigned point scores for various criteria. The RFP contemplated that the highest scoring operator would receive the new operating agreement.

The Authority's Board of Directors has 16 members appointed by the various member counties. Based on their relationships with companies that deal with Susquehanna in some capacity, six board members voluntarily decided not to participate in the selection process. The parties disagree whether those members actually recused themselves or merely abstained from voting.[1] In either event, and of significance, it was clear to all parties throughout the selection process that no more than 10 votes would be cast in deciding which operator would be awarded the new operating agreement.

The Act provides that an authority may take any permitted action upon the vote of a majority of the members "present" at a meeting, unless the authority's bylaws contain a different voting provision. 53 Pa. C.S. §5610(e). The Authority's

---

[1] The minutes of an Authority meeting in August 2014 reflect that the board voted to accept an "offer of recusal" from the six abstaining members, all of whom abstained from that vote. Reproduced Record (R.R.) at 1816a.

2

bylaws do not vary from the voting provision of the Act, other than to state that a majority of the members will constitute a quorum. Reproduced Record (R.R.) at 121a.

During the selection process, the Authority informed the candidates it would require the affirmative votes of at least nine board members before awarding a new operating agreement to any candidate. Thus, knowing that only 10 board members would be participating, the Authority essentially required nine of 10 votes to be cast in favor of a new operating agreement. The Authority did not include this purported requirement in the RFP; nor did it amend either the RFP or its bylaws to provide specifically for a majority vote of all members of the board in order to award an operating agreement. However, Carload did not protest this purported vote requirement when the Authority announced it.

At the conclusion of the evaluations, Carload had the highest point score. Susquehanna was second, with just one point fewer than Carload. The Authority held a meeting attended by all 16 board members. There were seven votes in favor of awarding the new operating agreement to Carload, three opposed, and six abstaining. Based on its prior announcement of the nine-vote requirement, the Authority took the position that no new operating agreement was awarded.

After Carload protested the Authority's refusal to award it the new operating agreement, the Authority filed a civil suit in the trial court, seeking a declaration that the 7-3 vote was ineffective to award the new operating agreement. Carload filed a counterclaim seeking declarations that the vote was effective and that

3

the Authority was required to execute a contract awarding Carload the new operating agreement.[2]

Ultimately, the trial court granted summary judgment in favor of the Authority. This appeal by Carload followed.

## II. Issues

The Act requires a majority vote of the members "present" at a meeting in order for the Authority to act. 53 Pa. C.S. §5610(e). On appeal,[3] Carload contends the members "present" at a meeting, as that term is used in the Act, include only those members who actually vote. A quorum of the Authority was 9 members. As 10 members actually voted, and seven votes constituted more than a majority of the quorum, Carload argues the vote was valid.[4] Thus, Carload asserts the 7-3 vote was effective to award the operating agreement, where all 16 members were in attendance, but six abstained.

---

[2] The Authority named all three of the second phase candidates as defendants in its complaint. Northern Plains Railroad, Inc., the third place candidate, withdrew its proposal and did not participate in the lawsuit. Susquehanna concurred with the Authority's position. Susquehanna also asserted an alleged ethics violation by one of the voting board members, which is not at issue in this appeal.

[3] On appeal from a trial court's order granting or denying summary judgment, our standard of review is de novo and our scope of review is plenary. Brewington v. City of Phila., 149 A.3d 901 (Pa. Cmwlth. 2016). Summary judgment is properly entered only when, "after examining the record in the light most favorable to the non-moving party, and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law." Pyeritz v. Commonwealth, 32 A.3d 687, 692 (Pa. 2011).

[4] In a later vote, the Authority voted 5-4 to award the contract to Carload, with the same six members abstaining. That vote is not at issue in this appeal. Notably, however, five votes also constituted a majority of the quorum.

4

The Authority contends Carload is bound by the Authority's advance announcement that nine affirmative votes would be required to award the operating agreement. The Authority did not amend its RFP or its bylaws regarding voting. However, the RFP contained a general reservation of rights, on which the Authority relies as empowering it to depart from the normal voting requirements. The Authority further asserts Carload is estopped from protesting the nine-vote requirement because it did not do so at the time the Authority announced it.

Without regard to whether the challenged vote was valid or invalid, Carload argues that as the high scorer in the evaluation process, it is entitled to be awarded the operating agreement in accordance with the criteria and award process provided by the Authority in its RFP. The Authority, again in reliance on its general reservation of rights in the RFP, insists it has no obligation to award the operating agreement.

### III. Discussion
### A. Majority Vote of Those "Present"
### 1. Common Law

Under the common law, once a quorum of a body is present, a majority of those present and voting, also described as a majority of the quorum, may act on behalf of the body. See, e.g., Dougherty v. Heller, 138 A.3d 611 (Pa. 2016) (the principle is almost universal that the majority of a quorum may act for the body); Raynovich v. Romanus, 299 A.2d 301 (Pa. 1973) (the majority of a quorum can validly act, at common law); Meixell v. Borough Council of Hellertown, 88 A.2d 594 (Pa. 1952) (the majority of a quorum could conduct business).

5

Importantly, this is true even if, because of abstentions, the majority of the affirmative votes constitutes only a plurality of the members in attendance. DiGiacinto v. Allentown, 406 A.2d 520 (Pa. 1979) (number of votes necessary to take official action does not depend on whether abstaining members choose to attend meeting, provided a quorum is present; otherwise, member's choice to attend and abstain could cause a different result from member's absence); Meixell (abstaining members do not count in computing number of votes required to constitute majority); Ronald H. Brown Charter Sch. v. Harrisburg City Sch. Dist., 928 A.2d 1145 (Pa. Cmwlth. 2007) (under common law, abstaining member cannot demand that majority vote requirement count that member's presence);  see also McAdoo Borough v. Pa. Labor Relations Bd., 469 A.2d 693 (Pa. Cmwlth. 1983) (citing Meixell and Raynovich) (where member of municipal body has personal or pecuniary interest in matter, neither his vote nor his presence can count toward either quorum or majority); Cmty. Coll. of Beaver Cty. v. Aliquippa Sch. Dist., 287 A.2d 844 (Pa. Cmwlth. 1972) (those who are unwilling or unable to vote are bound by majority vote of those who do vote); Commonwealth v. Fleming, 23 Pa. Super. 404 (1903) (members' presence makes vote decisive and binding whether they actually vote or not; object of vote cannot be defeated by refusal of any members to vote when present).

Carload urges application of the common law rule in this case.

## 2. Municipal Authorities Act

The Act provides that an authority may act upon the vote of a majority of the members "present" at a meeting.  53 Pa. C.S. §5610(e).  Carload argues

abstaining members are not "present" for purposes of determining a majority. Carload is correct, if the common law applies.

Prior to 1937, statutes in derogation of the common law were strictly construed, under the presumption that no change in the common law was intended beyond what the statute clearly and definitely prescribed. Heaney v. Mauch Chunk, 185 A. 732 (Pa. 1936); Boles's Estate, 173 A. 664 (Pa. 1934). Under 1 Pa. C.S. §1928, post-1937 statutes in derogation of the common law are no longer construed with a presumption in favor of the common law. However, where a post-1937 statute in derogation of the common law is substantially a reenactment of a pre-1937 statute, the rule of strict construction will continue to apply. Commonwealth v. Chiappini, 782 A.2d 490 (Pa. 2001); see 1 Pa. C.S. §1962 ("Whenever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation …").

Here, the Act is a substantial reenactment of a prior statute first enacted in 1935,[5] repealed and substantially reenacted in 1945.[6] The current Act is a 2001 codification of the 1945 statute. To the extent the Act's requirement, in 53 Pa. C.S. §5610(e), of a majority vote of those "present" is deemed to be in derogation of the common law, Carload is correct in asserting the statute must be strictly construed (presumed to follow common law).

---

[5] Act of June 28, 1935, P.L. 463, No. 191.

[6] Act of May 2, 1945, P.L. 382, No. 164.

7

The critical issue is whether the inclusion of the word "present" expressly alters the common law rule.

### 3. Similar Statutory Language

There is a dearth of authority in Pennsylvania addressing the construction of statutory language like that at issue here. The limited authority that is available is in apparent conflict.

In an archaic decision, Commonwealth ex rel. Swartz v. Wickersham, 66 Pa. 134, 136 (Pa. 1870), a statute authorized election of a county superintendent by a majority of the directors "present." There were 112 directors in attendance at a meeting to elect the county superintendent. One candidate obtained 56 votes, the other obtained 55 votes, and 1 director abstained. Our Supreme Court found the vote ineffective, despite the fact that one candidate received a majority of the votes cast. The Court refused to deem the abstaining director "virtually absent," concluding: "It would be dangerous to fritter away the express provision of the statute by construing an actual presence into a virtual absence." Id. However, in Swartz, the Court did not discuss the common law; nor did it consider whether statutory language requiring affirmative votes of a majority of those "present" was sufficiently specific to supplant the common law. There was also no indication whether the Court considered or applied any rules of construction in its interpretation of the statute.

More than a century later, in Commonwealth ex rel. Bagnoni v. Klemm, 454 A.2d 531 (Pa. 1982), our Supreme Court seemed to take the opposite position,

albeit in a discussion not essential to its decision. Under Section 3(b) of the Pennsylvania Higher Education Assistance Act of 1963,[7] "the act of a majority of the directors present at any meeting shall be deemed the act of the [b]oard …." Id. at 534. The Court pointed to this provision as an example of legislative language "codifying the Common Law Rule, thus requiring only a majority of a quorum …." Id. (citing Stoltz v. McConnon, 373 A.2d 1096 (Pa. 1977)). Although Bagnoni did not specifically address whether "present" should be construed as "present and voting" under the quoted statute, the common law rule does contemplate that meaning. Therefore, under Bagnoni, a statute that codifies the common law also includes that meaning.

In McAdoo, this Court reached a similar conclusion. Section 1001 of the former Borough Code[8] provided that the borough could act "'by vote of the majority of council present at a meeting ….'" Id. at 696 (quoting former 53 P.S. §46001). This Court found that statutory provision contained no language limiting the application of the common law. Therefore, we concluded "the common law maxim that a majority of a quorum may act for a body has not been abrogated by the General Assembly in The Borough Code." Id. Like Bagnoni, McAdoo did not address whether members attending but abstaining were "present" for purposes of determining a majority of the votes. Nevertheless, this Court, citing Bagnoni, described the common law as providing "that a majority of those voting in the presence of a quorum can act for the body." Id. at 696 n.8 (emphasis added).

---

[7] Act of August 7, 1963, P.L. 549, §3(b), as amended, 24 P.S. §5103(b) (Supp. 1982-83).

[8] Act of February 1, 1966, P.L. (1965) 1656, No. 581, 53 P.S. §46001, repealed by the Act of April 18, 2014, P.L. 432, No. 37, §3(2).

9

Thus, both our Supreme Court in <u>Bagnoni</u> and this Court in <u>McAdoo</u> concluded that statutory language substantially the same as that at issue here did not abrogate the common law regarding a determination of majority votes.

### 4. Result of Statutory Construction

There is logic to this conclusion as applied to this case. Here, the six abstaining members left an Authority meeting on a prior occasion before a vote relating to the RFP. R.R. at 1824a. On that occasion, the Authority acted based on a 7-3 vote after the six abstaining members left the room. R.R. at 1827a. However, based on uncertainty whether that vote was effective, a new vote was taken at a subsequent meeting. The six abstaining members again left the room, but the Authority's solicitor advised it would be "appropriate" to require nine votes to pass the motion at issue, thus treating the absent members as though they were present and voting against the motion. R.R. at 1833a-34a.[9]

If the Act's language supplanted the common law, it would ironically allow the abstaining members to control the outcome of the vote by choosing to abstain. Such a result is absurd. <u>See</u> <u>DiGiacinto</u>. Assuming the Act's language was in derogation of the common law, such an outcome would also be inconsistent with the requisite strict construction of the statutory language (presumed to follow the common law).

---

[9] When the Authority voted on awarding the new operating agreement, the six abstaining members elected to remain in the room.

10

## 5. Holding

For the foregoing reasons, we conclude that common law voting principles apply. Accordingly, this Court finds the Authority's 7-3 vote was effective to award the operating agreement to Carload notwithstanding the physical presence of the six abstaining members.

## B. The Authority's Pre-Announced Nine-Vote Requirement

Carload argues the Authority's announcement that it would require nine votes to award the operating agreement was ineffective. The Authority counters that the requirement was within its power. Further, the Authority asserts Carload acquiesced in the nine-vote requirement and is therefore estopped from challenging it.

As discussed above, the Act provides that an authority may take action based on the vote of a majority of the members present, unless the authority's bylaws provide otherwise. Here, the Authority's bylaws contain no contrary provision. Therefore, the bylaws as presently constituted do not empower the Authority to require more than a majority of the votes cast before awarding a new operating agreement.

Article VIII of the Authority's bylaws requires a majority vote of the members, at a regular or special meeting, in order to amend the bylaws. R.R. at 118a. The bylaws do not contemplate exceptions to the bylaw provisions in the absence of formal amendments. The Authority has not amended its bylaws. Further, it has not pointed to any statutory authority for its departure from the normal voting

11

requirements in this one instance. Alteration of voting requirements in the absence of a formal amendment to the bylaws is not authorized. Accord Beh v. Scranton, 560 A.2d 276 (Pa. Cmwlth. 1989) (overriding a voting provision not consistent with agency's enabling statute).

The RFP likewise contains no provision authorizing a change in the vote requirement to award the operating agreement. The Authority's reliance on its boilerplate reservations of rights in the RFP is unavailing. Where a municipal entity voluntarily undertakes to follow a specified procedure in awarding a contract, it must adhere to that process. Lasday v. Allegheny Cty., 453 A.2d 949 (Pa. 1982) (citing Am. Totalisator Co. v. Seligman, 414 A.2d 1037 (Pa. 1980)). The contract award process must also be in accord with basic standards of fairness; a municipal entity cannot disclaim that obligation by a purported reservation of rights to reject any or all proposals. Id.

The Authority argues Carload's failure to object at the time the Authority announced its intention to apply the nine-vote requirement constituted a misleading silence that estopped Carload from later asserting the sufficiency of the seven-vote plurality to award the operating agreement. Contrary to the Authority's argument, estoppel offers no basis to prevent Carload from challenging the unauthorized nine-vote requirement. Estoppel requires not only misleading words or silence by the party to be estopped, but reasonable reliance on such words or silence by the party asserting the estoppel. Makoroff v. Pa. Dep't of Transp., 938 A.2d 470 (Pa. Cmwlth. 2007). Although the Authority asserts it relied on Carload's silence, it avers no facts that genuinely support such reliance or demonstrate any

detriment suffered as a result. The Authority does not aver it would have scored Carload's proposal any differently had Carload questioned the vote requirement in advance; nor would such an averment have any merit, as principles of fairness would preclude use of such a criterion as part of the evaluation process. Further, the Authority does not contend that the 6 members who abstained would have done otherwise had Carload complained about the purported 9-of-10 vote requirement in advance. Nor does the Authority suggest that had those members voted, Carload would not have been awarded the operating agreement.

Accordingly, this Court concludes that Carload was not estopped from asserting a challenge to the Authority's requirement of nine affirmative votes before awarding the operating agreement.

### C. Execution of an Operating Agreement

In its counterclaim, Carload requested a declaration that it is entitled to an award and immediate execution of an operating agreement with the Authority as described in the RFP. The Authority again errs by relying on its purported reservation of rights in the RFP. As explained above, the Authority, in the RFP, voluntarily undertook to follow a particular procedure in awarding the operating agreement. By doing so, the Authority obligated itself to adhere to that procedure throughout the selection process. Lasday (citing Am. Totalisator). It could not rely on a boilerplate reservation of rights provision to disclaim that obligation. Id.

The Authority provided a detailed description in the RFP of the selection process it would use to award the new operating agreement. The RFP

13

plainly contemplated that the highest scoring proposal would be awarded the contract. The Authority offered no substantive reason for declining to award the operating agreement to Carload, which received the highest score under the Authority's own scoring process. Notably, the Authority is not permitted to award the operating agreement to another entity by ignoring its own selection procedure as mandated by the RFP. See Am. Totalisator (where the Commonwealth failed to abide by the terms of its own RFP, it lacked discretion to award a contract contrary to those terms, thus warranting judicial intervention).

Therefore, we conclude Carload has a legal right to be awarded the operating agreement.

## IV. Conclusion

The 7-3 vote of the Authority was effective to award the operating agreement to Carload. Therefore, Carload is entitled to immediate execution of an operating agreement consistent with the terms contemplated in the RFP. We therefore reverse the entry of judgment in favor of the Authority and remand this matter with a direction to the trial court to enter judgment in favor of Carload.

ROBERT SIMPSON, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Seda-Cog Joint Rail Authority      :
                                            :

               v.                 :     No. 617 C.D. 2017
                                              :

Carload Express, Inc., Susquehanna  :
Union Railroad Company, and Northern :
Plains Railroad, Inc.                   :
                                            :

Appeal of: Carload Express, Inc.   :

# **O R D E R**

**AND NOW**, this 3rd day of May, 2018, the Court of Common Pleas of Clinton County's entry of summary judgment in favor of Appellee, Seda-Cog Joint Rail Authority, is **REVERSED**.  This matter is remanded to the trial court for entry of summary judgment in favor of Appellant, Carload Express, Inc.

      Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge